QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Zeller (Bar No. 196417)
   michaelzeller@quinnemanuel.com
  Michael E. Williams (Bar No. 181299)
   michaelwilliams@quinnemanuel.com
  Diane Cafferata (Bar No. 190081)
   dianecafferata@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for WebGroup Czech Republic, as; WGCZ Holding, as; WGCZ Limited, sro; NKL Associates sro; Traffic F, sro; GTFlix TV, sro; FTCP, sro; VS Media, Inc.; HC Media, sro; HC Multimedia LLC; FBP Media sro; Stephane Michael Pacaud; Deborah Malorie Pacaud

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WebGroup Czech Republic, as; WGCZ Holding, as; WGCZ Limited, sro; NKL Associates sro; Traffic F, sro; GTFlix TV, sro; FTCP, sro; VS Media, Inc.; HC Media, sro; HC Multimedia LLC; FBP Media sro; Serverstack, Inc., Digital Ocean Holdings, Inc.; and Digital Ocean, LLC f/k/a/ Digital Ocean, Inc.; STEPHANE MICHAEL PACAUD; DEBORAH MALORIE PACAUD,<br><br>Defendants. | Case No. 2:21-cv-02428-VAP-SK<br><br>**DECLARATION OF ROBERT SEIFERT IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Judge: Hon. Virginia A. Phillips<br>Hearing Date: January 10, 2022<br>Hearing Time: 2:00 p.m.<br><br>Complaint Filed: March 18, 2021<br>Trial Date: None Set |

**TABLE OF CONTENTS**

**Page**

The Czech Entities ............................................................................................................ 1

WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. ......................................... 3

Traffic F, s.r.o. .................................................................................................................. 8

WGCZ Holding, a.s. and WGCZ Limited, s.r.o. ............................................................. 9

GTFlix TV, s.r.o. ............................................................................................................ 10

VS Media, Inc. and HC Multimedia LLC ..................................................................... 11

HC Media, s.r.o. and FBP Media, s.r.o. ........................................................................ 13

FTCP, s.r.o. .................................................................................................................... 13

Exercising Jurisdiction Over the Czech Entities Is Not Reasonable ........................... 14

**Declaration of Robert Seifert**

I, Robert Seifert, declare:

1. I act as administrative director for WebGroup Czech Republic, a.s.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; NKL Associates, s.r.o.; Traffic F, s.r.o.; FTCP, s.r.o.; HC Media, s.r.o.; GTFlix TV, s.r.o.; and FBP Media, s.r.o. (collectively, the "Czech Entities"). I make this declaration of the following facts from my direct, personal knowledge, except to the extent that facts are stated upon information and belief, and would competently testify thereto if called as a witness.

**The Czech Entities**

2. WebGroup Czech Republic, a.s.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; NKL Associates, s.r.o.; Traffic F, s.r.o.; GTFlix TV, s.r.o.; FTCP, s.r.o.; HC Media, s.r.o.; and FBP Media, s.r.o. (collectively, the "Czech Entities") are Czech Republic corporations organized and existing under Czech Republic law with their principal place of business in Prague, Czech Republic.

3. The Czech Entities do not have offices in California or the United States and are not registered to do business in California or any other U.S. state. The Czech Entities have no U.S.-based operations, no U.S. employees, own no U.S. property, rent no U.S. property, and pay no U.S. state or federal taxes.

4. The Czech Entities do not hold any U.S. bank accounts, have no U.S. mailing address or phone numbers, and do not have any designated agents residing in, domiciled in, or doing business from California or the United States. None of the Czech Entities' officers or directors reside in or are domiciled in California or the United States.

5. The Czech Entities have never filed a lawsuit in California (or anywhere else in the United States for that matter), nor have they sought the protection of any California laws.

6. The First Amended Complaint ("FAC") alleges that each of the Czech Entities acts as the alter ego of the others. FAC ¶ 68. That is incorrect. Moreover,

contrary to the allegations in the FAC, the Czech Entities (and their affiliates) are not:

- a "website enterprise under common control with integrated business resources in pursuit of a single business purpose," *id.* ¶ 46,
- "a single enterprise with no independent will of their own and simply . . . liability shields for the Pacauds," *id.* ¶ 55,
- "related corporations that operate as a single enterprise . . . [that are] mere conduits whose actions [are] controlled and ratified by . . . the Pacauds," *id.* ¶ 61,
- "operated by the Pacauds as a single enterprise with WebGroup Czech Republic directing the operations and financial policies of all the WGCZ Defendants such that they are merely business conduits for the Pacauds, using integrated resources in pursuit of a single business purpose," *id.* ¶ 70, or
- a "sham [created] to perpetrate fraud and avoid liability," *id.* ¶ 71.

7. Rather, as shown below, each of the Czech Entities operates as a distinct entity with a unique business purpose and function. Moreover, the Czech Entities maintain separate corporate minutes and records and otherwise observe corporate formalities by, for example, maintaining separate bank accounts and not commingling assets, contrary to the allegations in the FAC. *See id.* ¶¶ 55(e), 56.

8. Eleven entities, WebGroup Czech Republic, a.s.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; NKL Associates s.r.o.; Traffic F, s.r.o.; GTFlix TV, s.r.o.; FTCP, s.r.o.; VS Media, Inc.; HC Media, s.r.o.; HC Multimedia LLC; and FBP Media s.r.o., are collectively referred to in the FAC as "WGCZ Defendants," "WGCZ," or "WGCZ entities." *Id.* ¶ 14. Plaintiff then uses these terms to refer to all of the above entities collectively throughout the FAC, even though, with limited exceptions, the specific allegations in the FAC about her trafficking and the display

of her videos relate to websites owned and controlled only by WebGroup Czech Republic, a.s. and NKL Associates s.r.o. and not any of the other entities.

### **WebGroup Czech Republic, a.s. and NKL Associates, s.r.o.**

9. The FAC alleges that "videos of adults engaging in sex acts with Jane Doe while she was a minor were uploaded and disseminated through websites owned, operated and/or controlled by Defendants, including, but not limited to Xvideos and XNXX." *Id.* ¶ 192. The FAC further alleges that "Plaintiff's videos were removed in response to a cease and desist letter sent in Fall 2020 identifying the videos as illegal child sexual abuse material." *Id.* ¶ 196.

10. WebGroup Czech Republic, a.s. operates several adult websites, including xvideos.com, xvideosdaily.com, and xvideostoday.net (collectively, the "XVideos Sites"). Xvideos.com is a video hosting website, where registered users can upload adult videos. Visitors to xvideos.com can view those videos for free without creating an account. Visitors can also create a free account, allowing them to upload and download videos, among other things. Xvideos.com is commonly referred to as a "tube" site, meaning a website that allows users to watch previously recorded content.

11. WebGroup Czech Republic, a.s. acquired xvideosdaily.com and xvideostoday.net from prior owners in November 2014. Since January 2015, the two websites have been used as referral pages for xvideos.com; they have displayed either screen captures of the xvideos.com homepage, or links that redirect users to xvideos.com, but have no other content of their own.

12. WebGroup Czech Republic, a.s. does not aim its websites at any particular country. Rather, the XVideos Sites are available to the entire world of internet users. The percentage of total visitors to XVideos.com with United States IP addresses varies over time and generally ranges between 12 and 19 percent (with the rest of the visitors coming from other countries around the world). The number of visitors to xvideosdaily.com and xvideostoday.net is small, and WebGroup Czech

Republic, a.s. does not track it. As these statistics make clear, and contrary to the allegations in the FAC, the "majority" of WebGroup Czech Republic, a.s.'s "market" is not "concentrated in the United States." *Id.* ¶ 18.

13. WebGroup Czech Republic, a.s. does not solicit videos from any particular country. Rather, any user that creates an account on xvideos.com can choose to upload content to xvideos.com. Users that upload videos to xvideos.com agree to the Xvideos Terms of Service and therefore agree that they will not, among other things, "submit material that depicts any person under 18 years of age (or the age of majority under the laws of your state or jurisdiction), whether real or simulated."[1]

14. The FAC alleges that "[t]he XVideos website is a complicated enterprise of domains owned, operated, controlled and/or actively managed collectively by the Defendants." *Id.* ¶ 2. This is incorrect. As shown above, xvideos.com is owned, operated, controlled, managed, and developed by WebGroup Czech Republic, a.s.; the website is not "managed collectively by the Defendants." *Id.*; *cf. id.* ¶ 30 (alleging that xvideos.com "is actively managed and developed by DigitalOcean via the name ServerStack"). Nor is the "Xvideos website enterprise . . . grounded in the United States while being complemented and hidden by a web of Czech companies." *Id.* ¶ 3. While WebGroup Czech Republic, a.s. has business relationships with certain entities that are headquartered in the U.S.—such as EPOCH, PayPal, Google, and Twillio—WebGroup Czech Republic, a.s. is merely their customer, and none of these relationships is the subject of the plaintiff's allegations. Moreover, WebGroup Czech Republic, a.s. does not have any ownership interest in, control over, or corporate relationship with these U.S.-based businesses.

---

[1] https://info.xvideos.com/legal/tos/.

15. The FAC alleges that WebGroup Czech Republic, a.s. has "brought numerous complaints under U.S. trademark law." *Id.* ¶ 32. This allegation is misleading because the complaints referenced were not filed with any U.S. state or federal court but were instead filed with the World Intellectual Property Organization (WIPO), which is headquartered in Geneva, Switzerland. As noted above, the Czech Entities have never filed a lawsuit in the U.S.

16. The FAC also alleges that WebGroup Czech Republic, a.s. has described itself in these complaints as being "domiciled" in Las Vegas, Nevada, and Miami, Florida. *Id.* This is misleading and irrelevant. First, that WIPO, a non-party, has made a statement about its understanding of the WebGroup Czech Republic, a.s.'s location, or that WebGroup Czech Republic, a.s. chose not to correct such a statement any given instance, is not evidence of where WebGroup Czech Republic, a.s. is based. Second, while certain WIPO decisions describe WebGroup Czech Republic, a.s. as being from Las Vegas, Nevada, or Miami, Florida, those descriptions are inaccurate. Those WIPO decisions apparently conflated the location of WebGroup Czech Republic, a.s. with that of its counsel: Randazza Legal Group (located in Las Vegas, Nevada) and Fischer Law, P.L. (located in Miami, Florida). Third, other WIPO decisions accurately state that WGCZ is "of the Czech Republic." *See, e.g.*, *WGCZ, s.r.o. v. Hunt*, Case No. DTV2014-0006.[2] Contrary to the allegations in the FAC, WebGroup Czech Republic, a.s. has never "described" itself as a resident of Las Vegas, Nevada, or Miami, Florida, because it is not.

17. NKL Associates, s.r.o. is the owner and operator of xnxx.com and has been since 2014. Xnxx.com is a "tube" site that is similar to xvideos.com, and it displays basically the same video content as xvideos.com but through a different interface.

---

[2] https://www.wipo.int/amc/en/domains/search/text.jsp?case=DTV2014-0006.

18. NKL Associates, s.r.o. does not aim xnxx.com at any particular country. Rather, xnxx.com is available to the entire world of internet users. The percentage of total visitors to xnxx.com with United States IP addresses varies over time and generally ranges between 12 and 19 percent (with the rest of the visitors coming from other countries around the world).

19. NKL Associates, s.r.o. does not solicit videos from any particular country. Rather, any user that creates an account on xnxx.com can choose to upload videos or photos to xnxx.com. Users that upload videos or photos to xnxx.com agree to the XNXX Terms of Service and therefore agree that they will not, among other things, "submit material that depicts any person under 18 years of age (or the age of majority under the laws of your state or jurisdiction), whether real or simulated."[3]

20. The FAC suggests that xvideos.com and xnxx.com are stored on servers located at a data center in San Jose, California. *See* FAC ¶¶ 17, 77. This is not accurate. Xvideos.com and xnxx.com are stored on servers located in Amsterdam, Netherlands, which are maintained and operated by ServerStack, Inc. This is confirmed by the Declaration of Alan Shapiro, filed on August 23, 2021, which states that ServerStack, Inc. "has no presence in California," ECF No. 116-2 at 2 ¶ 4, and that xvideos.com, xnxx.com, xvideosdaily.com, and xvideostoday.net "are all hosted on servers located outside of the United States," *id.* at 3 ¶ 6. The videos complained of in the FAC were stored on servers located outside of the United States, to the extent they were uploaded to either xvideos.com or xnxx.com at all.

21. The FAC alleges that WebGroup Czech Republic, a.s. uses "a US Company with US servers as a content delivery network ('CDN') to essentially copy original content to additional servers located in the United States, including California, to enhance the speed of the website, among other things." FAC ¶ 17.

---

[3] https://info.xnxx.com/legal/tos.

1  Given the current state of internet technology, it is not ideal to efficiently and
2  reliably stream high-definition video content to all users over the globe without
3  using CDNs. Because xvideos.com and xnxx.com have a global user base,
4  WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. contract with CDN
5  companies, including CDN companies in the U.S., so that users viewing videos have
6  uninterrupted experience. CDNs make xvideos.com and xnxx.com available to end
7  users wherever they may be located, even if they are on the opposite side of the
8  globe from the xvideos.com and xnxx.com servers in Amsterdam.

9        22.    Neither WebGroup Czech Republic, a.s. nor NKL Associates, s.r.o.
10 have any ownership interest, control over, or corporate relationship with any of their
11 CDN providers; the two Czech Entities are merely their customers. Nor do the two
12 Czech Entities have access to or control over the CDN facilities owned by its CDN
13 providers, including those located in the U.S. Rather, the CDN providers have
14 access to the servers that host xvideos.com and xnxx.com, which are located in
15 Amsterdam, and the CDN providers use automated processes to "pull" certain
16 content from those servers in Amsterdam onto the CDN providers' regional
17 facilities based upon local user clicks and videos.

18       23.    It is my understanding that content "pulled" by CDN providers is
19 temporarily cached on, and served from, the CDN facilities and subsequently
20 deleted—all through an automated process driven by user interactions with
21 xvideos.com and xnxx.com. Neither WebGroup Czech Republic, a.s. nor NKL
22 Associates, s.r.o. has any involvement in this automated process.

23       24.    Unlike the initial complaint, the FAC now alleges that plaintiff
24 "reached out to XVideos and XNXX many times over the years, beginning in at
25 least 2017, requesting her abuse videos be removed." *Id.* ¶ 199. The FAC also
26 alleges that plaintiff "never received a response from the websites" and that "[t]he
27 videos remained live until her attorneys sent a demand letter on her behalf." *Id.*
28 ¶ 200. I was surprised by these allegations because they are the first time that

plaintiff claimed that she had requested that her videos be removed before the cease-and-desist letter was sent in Fall 2020. WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. have searched for the reports that plaintiff supposedly made "beginning in at least 2017," but they have identified none. Moreover, had plaintiff used the reporting form on xvideos.com and xnxx.com, as she now claims, *id.* ¶ 199, she would have received written acknowledgments of her complaints. But plaintiff did not attach any of those to the FAC.

### Traffic F, s.r.o.

25. Another of the Czech Entities, Traffic F, s.r.o., runs Traffic Factory, a website that offers website-advertising and digital-marketing services. Through this website, Traffic F, s.r.o. purchases advertising space from Webgroup Czech Republic, a.s.'s and NKL Associates, s.r.o.'s Czech websites, and sells it to businesses seeking to advertise their goods or services.

26. Traffic F. s.r.o. does not aim Traffic Factory's sales efforts towards any particular country. Rather, advertising space is made available to the entire world.

27. The FAC alleges that "Traffic Factory is a web advertising and digital marketing company created by WGCZ." *Id.* ¶ 117. That is inaccurate. Traffic Factory was created by Traffic F, s.r.o., not WebGroup Czech Republic, a.s. The FAC alleges that "WGCZ edits advertisements placed on its websites and, through Traffic Factory, facilitates data-driven decisions about advertising content." *Id.* ¶ 161. That too is inaccurate. Traffic F, s.r.o. works with its advertisers, not WebGroup Czech Republic, a.s., regarding decisions as to the placement and targeting of advertisements.

28. The FAC alleges that "Traffic Factory is actively managed in the United States by Traffic Factory's 'Team America' with representative account managers residing in the United States." *Id.* ¶ 21. This is inaccurate. Neither of the three "Account Managers" for "Team America" reside in the United States; that is evident from their LinkedIn profiles, which are directly accessible from

trafficfactory.com.[4] This allegation is also misleading in that it implies that "Team America" targets the U.S. only, but rather "Team America" targets North, Central, and South America.

29. Traffic F, s.r.o. is not involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is Traffic F, s.r.o. responsible for monitoring, and does not monitor, any of the videos uploaded to xvideos.com or xnxx.com. Plaintiff does not allege that Traffic F, s.r.o. in particular had any involvement in her alleged trafficking or the alleged display of her videos.

### WGCZ Holding, a.s. and WGCZ Limited, s.r.o.

30. Czech Entities WGCZ Holdings, a.s. and WGCZ Limited, s.r.o. are holding companies that hold ownership interests in other entities. WGCZ Holdings, a.s. is the owner of WGCZ Limited, s.r.o. and GTFlix TV, s.r.o., another Czech Entity. None of these three Czech entities is specifically alleged to have had any involvement in the plaintiff's alleged trafficking or the alleged display of her videos.

31. WGCZ Holdings, a.s. does not provide any technological support to the XVideos Sites or xnxx.com and is not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is WGCZ Holdings, a.s. responsible for monitoring, and it does not monitor, any of the videos uploaded to xvideos.com or xnxx.com.

32. In June 2018, WGCZ Limited, s.r.o. acquired Penthouse World Media LLC; Penthouse World Broadcasting LLC; Penthouse World Digital LLC; Penthouse World Licensing LLC; and Penthouse World Publishing LLC (the "Penthouse Entities"). The FAC suggests that other of the Czech Entities may hold an ownership interest in the Penthouse Entities. *See id.* ¶ 23. That is not the case.

---

[4] https://www.trafficfactory.com/contact-us/index.html.

33. The Penthouse Entities create adult content, such as the Penthouse magazine. The Penthouse Entities maintain separate corporate minutes and records and otherwise observe corporate formalities by, for example, maintaining separate bank accounts and not commingling assets. The Penthouse Entities do not have any direct relationship with WebGroup Czech Republic, a.s. or NKL Associates, s.r.o., the operators of the XVideos Sites and xnxx.com, respectively.

34. WGCZ Limited, s.r.o. and the Penthouse Entities do not provide any technological support for the XVideos Sites or xnxx.com and are not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is WGCZ Limited, s.r.o. or the Penthouse Entities responsible for monitoring, nor do they monitor, any of the videos uploaded to Xvideos.com or xnxx.com.

35. None of the Penthouse entities is a defendant or is alleged to have had any involvement in the alleged trafficking of the plaintiff or the alleged display of her videos.

36. The FAC alleges that "WGCZ commingled funds or otherwise had long-term loans with subsidiaries and 'related entities,'" and in support of this, the FAC identifies a loan that WGCZ Holdings, a.s. made to one of the other Czech Entities: GTFlix TV, s.r.o. *See id.* ¶ 56. As the FAC acknowledges, this loan was documented in, among other things, in an annual report. This is consistent with the manner in which the Czech Entities and their affiliates operate: all loans between the Czech Entities and any of their affiliates are properly documented. The Czech Entities do not, and never have, transferred assets amongst themselves for no ascertainable reason or for any improper purpose, such as to avoid creditors.

### **GTFlix TV, s.r.o.**

37. Czech Entity GTFlix TV, s.r.o. operates websites, including one previously known as legalporno.com, and produces adult content that may be placed on those websites. In doing so, GTFlix TV, s.r.o. works with adult-film studios and affiliates.

38. The FAC alleges that "[a]t least one 'content partner' and official 'channel' on Xvideos and XNXX disseminated . . . illegal videos of Jane Doe's rape." *Id.* ¶ 196. The "content partner" and/or "official" channel referred to in the FAC is not GTFlix TV, s.r.o or any of its studios and affiliates.[5] GTFlix TV, s.r.o. was not involved in filming, producing or displaying any of the videos involving plaintiff, and she has not alleged that it was (aside from including it as one of the eleven "WGCZ Defendants" that allegedly own and control xvideos.com).

39. The FAC alleges that "the Legal Porno studio owned and/or controlled by . . . GTFlix TV, sro has used force, fraud, and coercion against women performers, who were severely injured by the extreme and violent nature of the pornography filming." *Id.* ¶ 154. This allegation does not have any connection to plaintiff.

40. GTFlix TV, s.r.o. does not provide any technological support to the XVideos Sites or xnxx.com and is not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is GTFlix TV, s.r.o. responsible for monitoring, and it does not monitor, any of the videos uploaded to Xvideos.com or xnxx.com.

## VS Media, Inc. and HC Multimedia LLC

41. VS Media, Inc. and HC Multimedia LLC operate what are commonly referred to as "cam sites." These websites allow users to view and interact, in real

---

[5] Nor was this "content partner" BangBros, which the FAC alleges is "a Miami-based pornography studio" that is "owned by Sonesta Technologies, s.r.o." FAC ¶ 55(d). The FAC also alleges that "BangBros has filmed, produced, and distributed child pornography of at least one minor." *Id.* ¶ 151. Even if that were true, that minor was not plaintiff. The minor in the article cited in the FAC used a "stolen ID" and filled out a W-9 "under her assumed identity." According to the 2013 article, the criminal investigation related to this incident was closed after three assistant state attorneys concluded they could not charge anyone with a crime. In any event, BangBros was not involved in filming, producing or displaying any of the videos involving plaintiff, and she has not alleged that it was.

time, with entertainers performing live performances. VS Media, Inc. and HC Multimedia LLC do not permit user uploads (in contrast with tube sites like xvideos.com).

42.  VS Media, Inc. is wholly owned by WorldWeb Services, s.r.o., a Czech company that is not named as a defendant in this case. VS Media, Inc. is a California corporation that owns various cam sites, including flirt4free.com. HC Multimedia LLC, a Nevada limited liability company, is a subsidiary of VS Media, Inc., and it operates various cam sites, including camster.com and naked.com.

43.  The FAC does not allege that any sexual abuse of plaintiff was displayed on the cam sites operated by VS Media, Inc. or HC Multimedia LLC, or any cam site for that matter. Nor does the FAC allege that plaintiff was an entertainer for any of the cam sites operated by VS Media, Inc. or HC Multimedia LLC. On information and belief, none of the videos involving plaintiff were displayed on any of the Flirt4Free websites.

44.  Two of the Flirt4Free websites operated by VS Media, Inc. are cams.xvideos.com and cams.xnxx.com, which are accessible from links on xvideos.com and xnxx.com, respectively. These two cam sites are separate and distinct from xvideos.com and xnxx.com in that they are hosted on different servers and are operated by VS Media, Inc., as opposed to WebGroup Czech Republic, a.s. or NKL Associates, s.r.o. The FAC appears to acknowledge this when it alleges that "VS Media, Inc. manages, operates and controls an XVideos enterprise webcam model domain/platform, connected to the XVideos infrastructure from their California headquarters." *Id.* ¶ 24. To be clear, however, the servers on which cams.xvideos.com and cams.xnxx.com are hosted are distinct from the servers on which xvideos.com and xnxx.com are hosted, and the latter servers are located in Amsterdam, not California. Moreover, the xvideos.com and xnxx.com servers in Amsterdam are not somehow "connected to" VS Media's "California headquarters."

In any event, VS Media, Inc. is not responsible for monitoring, and does not monitor, any of the videos uploaded to xvideos.com or xnxx.com.

45. There are no specific allegations about HC Multimedia LLC in the FAC. It does not provide any technological support to the XVideos Sites or xnxx.com and is not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is HC Multimedia LLC responsible for monitoring, and it does not monitor, any of the videos uploaded to Xvideos.com or xnxx.com. None of the videos involving Jane Doe were displayed on any of HC Multimedia LLC's cam sites.

### HC Media, s.r.o. and FBP Media, s.r.o.

46. Czech Entities HC Media, s.r.o and FBP Media, s.r.o. are European credit resellers. Users of VS Media, Inc.'s and HC Multimedia LLC's cam sites pay for products and services on those cam sites with credits that they purchase. FBP Media, s.r.o. and HC Media, s.r.o. sell these credits to customers and facilitate banking relationships in the European Union.

47. FBP Media, s.r.o. and HC Media, s.r.o. do not provide any technological support to the XVideos Sites or xnxx.com and are not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is FBP Media, s.r.o. or HC Media, s.r.o. responsible for monitoring, and they do not monitor, any of the videos uploaded to Xvideos.com or xnxx.com.

48. As noted above, the FAC does not allege that any sexual abuse of Jane Doe was displayed on the cam sites operated by VS Media, Inc. or HC Multimedia LLC. And thus none of the credits sold by FBP Media, s.r.o. or HC Media, s.r.o. were used to view or purchase videos of Jane Doe.

### FTCP, s.r.o.

49. FTCP, s.r.o. provides management services to entertainers in Romania, Bulgaria, Slovakia, and the Czech Republic who create content for cam sites, including those operated by VS Media, Inc. and HC Multimedia LLC. FTCP, s.r.o.

does not provide management services to entertainers in the U.S. and has never provided management services to the plaintiff. Nor was FTCP, s.r.o. involved in trafficking the plaintiff in any way.

50. FTCP, s.r.o. does not provide any technological support to the XVideos Sites or xnxx.com and is not otherwise involved in maintaining or operating the XVideos Sites or xnxx.com. Nor is FTCP, s.r.o. responsible for monitoring, and it does not monitor, any of the videos uploaded to xvideos.com or xnxx.com.

**Exercising Jurisdiction Over the Czech Entities Is Not Reasonable**

51. In sum:

(a) The Czech Entities do not have any "continuous and systematic" general business contacts within California in particular or the United States in general;

(b) The Czech Entities have not "purposefully availed" themselves of the benefits or protections of the law of California in particular or of the United States in general;

(c) The Czech Entities have not "purposefully directed" their activities toward California in particular or the United States in general;

(d) The Czech Entities do not operate any servers in California or in the United States in general;

(e) The vast majority of the Czech Entities' revenue is derived from sources outside of the United States;

(f) All of the Czech Entities' individuals who might have information or knowledge related to the allegations of the FAC are located outside of the United States, and the vast majority do not speak English or do not speak English as a first language;

(g) Given the Czech Entities' lack of a physical or business presence in California in particular and the United States in general, it would be

unduly burdensome for the Czech Entities to defend against a lawsuit in this forum; and

(h) To the extent that a U.S. court issues an order compelling the Czech Entities to take (or refrain from) any action, that order may be inconsistent with the Czech Entities' legal obligations under Czech Republic and EU law.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on October 25, 2021, at Prague, Czech Republic.

*/s/ Robert Seifert*
Robert Seifert

-15-

Case No. 2:21-cv-02428-VAP-SK
DECLARATION OF ROBERT SEIFERT