**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Jane Doe,

             Plaintiff,

             v.

WebGroup Czech Republic, as, et

   al

             Defendants.

Case No. 2:21-cv-02428-VAP-SKx

**Order GRANTING Motions to Dismiss (Dkt. 133, 134)**

Before the Court is a Motion to Dismiss filed by Defendants ServerStack, Inc., DigitalOceanHoldings, Inc., and DigitalOcean, LLC (the "Server Defendants") (Dkt. 133); a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendants WebGroup Czech Republic, a.s., WGCZ Holding, a.s., WGCZ Limited, s.r.o., NKL Associates, s.r.o., Traffic F, s.r.o., GTFlix TV, s.r.o., FTCP, s.r.o., HC Media, s.r.o., FBP Media, s.r.o., Stephane Michael Pacaud, and Deborah Malorie Pacaud (the "Foreign Defendants") (Dkt. 134); a Motion to Dismiss filed by Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. (Dkt. 135); and a Motion to Dismiss filed by Defendants WGCZ Holding, as, WGCZ Limited, s.r.o., Traffic F, s.r.o., GTFlix TV, s.r.o., FTCP, s.r.o., VS Media, Inc., HC Media, s.r.o., HC Multimedia LLC, and FBP Media, s.r.o. (the "Czech Entity Defendants,") and Stephane Michael Pacaud and Deborah Malorie Pacaud (the "Pacauds") (Dkt. 136).

United States District Court
Central District of California

United States District Court
Central District of California

After considering all the papers filed in support of, and in opposition to, the Motions, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15.  The Court **GRANTS** the Motions.  (Dkt. 133, Dkt. 134)

## I.      BACKGROUND

On March 18, 2021, Plaintiff Jane Doe ("Plaintiff") filed a Class Action Complaint against all Defendants for violations of sex trafficking laws and child pornography laws.  (Dkt. 1).  On September 13, 2021, Plaintiff filed a First Amended Complaint ("FAC") alleging the following claims: 1) Benefitting from a Sex Trafficking Venture – 18 U.S.C. §§ 1591 and 1595; 2) Receipt and Distribution of Child Pornography – 18 U.S.C. §§ 2252 and 2252a; 3) Receipt and Distribution of Child Pornography – 18 U.S.C. § 2260; and 4) Distribution of Private Sexually Explicit Materials – Cal. Civ. Code § 1708.75.  (Dkt. 127).

According to the FAC, Plaintiff is a victim and survivor of childhood sex trafficking who had videos and images of her abuse sold and/or distributed on websites owned by Defendants, including XVideos.com ("XVideos") and Xnxx.com.  (*Id.* at 3).  XVideos.com is "a video-hosting website where registered users can upload adult videos." (Dkt. 134, at 5). In this case, unnamed third parties uploaded videos and images of adults trafficking Plaintiff as a minor, where they were viewed, downloaded, and disseminated by XVideos users.  (Dkt. 133, at 4).  Xnxx.com "is similar to

xvideos.com and displays mostly the same video content as xvideos.com but through a different interface."  (Dkt. 134, at 5).

Plaintiff alleges that the "XVideos website is a complicated enterprise of domains owned, operated, controlled and/or actively managed collectively by the Defendants," and that "[t]he Defendants, on their websites and servers, created, organized, facilitated dissemination, optimization, and monetization of images and videos that depict child sexual abuse material . . . often referred to as child pornography."  (FAC, at 1-2).  Plaintiff brings this action on behalf of herself and two putative classes.  The first putative Class consists of:

> All persons, who were under eighteen years of age at the time they were depicted in any video or image, (1) in any commercial sex act as defined under 18 U.S.C. §§ 1591 and 1595, or (2) in any child pornography as defined under 18 U.S.C. § 2252A, or (3) engaging in sexually explicit conduct as defined under 18 U.S.C. § 2260, that has been made available for viewing on any website owned or oper-ated by the Defendants.  (FAC, at 53).

The second putative class, the "California Subclass," consists of:

> All persons residing in California who were under eighteen years of age at the time they were depicted in any video or image, (1) in any commercial sex act as defined under 18 U.S.C. §§ 1591 and 1595, or (2) in any child pornogra-phy as defined under 18 U.S.C. § 2252A, or (3) engaging

3

in sexually explicit conduct as defined under 18 U.S.C. §
2260, that has been made available for viewing on any
website owned or operated by the Defendants. (FAC, at
53).

Plaintiff brings claims against sixteen Defendants, which may be
grouped according to their different roles in the operation of the XVideos
website enterprise.

### A.  The Server Defendants

The Server Defendants – ServerStack, Inc., DigitalOcean Holdings,
and DigitalOcean, LLC--manage servers where the XVideos website and
related websites are hosted.  (Dkt. 133, at 2).[1]  Specifically, "ServerStack
provides web hosting services for XVideos.com and related websites . . . ,
which host images and videos submitted by their users."  (*Id.* at 4).  The
Server Defendants are incorporated in Delaware or New York and have their
headquarters and principal places of business in New York.  (*Id.*).  Plaintiff
also alleges that ServerStack "is doing business in California through its
data center located in San Jose, California," and that the Digital Ocean
companies maintain a branch and do business in California.  (FAC, at 20).

According to the FAC, the Server Defendants create and manage
server infrastructure for XVideos.com, including "[v]ideo encoding, thumbnail

---

[1] "Defendant ServerStack, Inc. is a wholly owned subsidiary of Defendant
Digital Ocean, LLC, which in turn is a wholly owned subsidiary of Defendant
Digital Ocean Holdings, Inc., a publicly traded New York-based online host-
ing provider."  (*Id.* at 4).

4

creation, and video playing," as well as searching and indexing functions, commenting services, and chat services.  (*Id.* at 43).  By providing the infrastructure for these services, Plaintiff alleges the Server Defendants "work together" with XVideos to "optimize data to steer viewers toward content that they seek the most."  (*Id.* at 45).  Plaintiff further alleges that XVideos notifies the Server Defendants when there are reports of child pornography or sex trafficking on the website, and the Server Defendants have the ability to "capture, mark, identify, remove, and report said videos."  (*Id.* at 44).  Through their actions in hosting and facilitating the XVideos website, Plaintiff alleges that the Server Defendants facilitate and profit from sex trafficking of minors, including Jane Doe.

### B.   The Czech Entity Defendants

Plaintiff brings claims against nine Czech entities--WebGroup Czech Republic, a.s., WGCZ Holding, a.s., WGCZ Limited, s.r.o., NKL Associates, s.r.o., Traffic F, s.r.o., GTFlix TV, s.r.o., FTCP, s.r.o., HC Media, s.r.o., FBP Media s.r.o.—and asserts that these are "essentially the same entity, act as a single enterprise for a common purpose, and share each other's jurisdictional contacts."  (FAC, at 5).  These entities allegedly develop, operate, and control the XVideos website enterprise.  (*Id*. at 13).  Although Plaintiff alleges that the Czech entities are "intertwined and related," WebGroup Czech Republic, a.s., ("WGCZ"), owns and operates XVideos.com, and NKL Associates, s.r.o. ("NKL") owns and operates Xnxx.com.  (Dkt. 141, at 3; Dkt. 134-1).  All of the Czech Entity Defendants are Czech Republic corporations with their principal places of business in Prague, Czech Republic.  (Dkt. 134, at 4).

Plaintiff alleges that the Czech Entity Defendants, and in particular, WGCZ, facilitate and profit from sex trafficking of minors in a variety of ways, including by: allowing account holders on XVideos.com and related websites to upload videos without age verification of any kind; generating, originating, and creating tags that help users locate the type of video they are searching for, including child pornography; allowing potential pedophiles and criminals to communicate with providers of victims through its chat system; and refusing to monitor or control who is posting or present in videos on its websites.  (*See* FAC).  Plaintiff further alleges that WGCZ has refused to remove videos of minor victims of sex trafficking when victims or their representatives have requested the company do so.  (*Id.* at 40).

**C.   Defendants Stephane Michael Pacaud and Malorie Deborah Pacaud**

Defendant Stephane Michael Pacaud is the founder, majority shareholder, and an executive of WGCZ and its related entities.  (FAC, at 19).  Although the FAC states that his last known residence is in the French Republic, he reports that he is a tax resident of and lives in the Czech Republic.  (Dkt. 14-2, at 1).  Stephane's sister, Defendant Malorie Deborah Pacaud, is also a founder, shareholder and executive of WGCZ and its related entities.  (*Id.*).  Although the FAC states that her last known residence is in Prague, Czech Republic, she reports to be a citizen of and reside in France.  (Dkt. 134-3, at 2).  Both siblings are allegedly primary decision makers with knowledge and control over WGCZ and the other Czech entities.  (*Id.*).  The FAC alleges that the Pacauds are separately and

6

jointly responsible with the Czech Entity Defendants for any damages.  (*Id.* at 22).

## II.    LEGAL STANDARD

### A.   Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction.  "In order to exercise personal jurisdiction over a nonresident defendant in a case presenting a federal question, the district court must first determine that 'a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles of Fifth Amendment due process.'"  *Doe v. Unocal Corporation*, 248 F.3d 915, 921-22 (9th Cir. 2001) (quoting *Go-Video, Inc. v. Akai Electric Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989)). Due process requires that nonresident defendants have certain "minimum contacts" with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe v. Washington*, 326 U.S. 310 (1945).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

A court may exercise personal jurisdiction over a nonresident defendant generally or specifically.  *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).  "For claims sounding in contract," the Ninth Circuit "generally appl[ies] a 'purposeful availment' analysis and ask whether a defendant has 'purposefully avail[ed] [himself] of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Col.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Thus, specific jurisdiction exists when: (1) the defendant purposefully avails himself of the "privilege of conducting activities in the forum," (2) the claims arises "from the defendant's forum-related activities," and (3) the exercise of personal jurisdiction is reasonable. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1287 (9th Cir. 1977).  Alternatively, a court has general jurisdiction when the defendant's activities within a state are "substantial" or "continuous and systematic."  (*Id*.).

The plaintiff has the burden to establish a court's personal jurisdiction over a defendant.  *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984), *cert. denied*, 470 U.S. 1005 (1985).  The plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (where trial court rules on jurisdictional issue based on affidavits and discovery materials without holding evidentiary hearing, plaintiff need only make prima facie showing).

"[C]onflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists*." Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  Nevertheless, "a court need

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

United States District Court
Central District of California

not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

### B.   Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them— as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

9

United States District Court
Central District of California

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." (*Id.*).  To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that: (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public rec-
ord outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,
649 (9th Cir. 1988).

## III.    DISCUSSION

### A.   The Foreign Defendants

1.   <u>Personal Jurisdiction</u>

The Court will first address the "Foreign Defendants'" Motion to
Dismiss for Lack of Personal Jurisdiction (Dkt. 134).  All of the Defendants
located outside of the United States—the Czech Entity Defendants and the
Pacauds—argue this Court lacks personal jurisdiction over them.

Under the Due Process Clause of the Fourteenth Amendment, to
exercise personal jurisdiction over an out-of-state defendant, the defendant
must have "certain minimum contacts with [the state] such that the
maintenance of the suit does not offend traditional notions of fair play and
substantial justice."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564
U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,
316 (1945) (internal quotations omitted)).  Since *International Shoe*, courts
"have recognized two types of personal jurisdiction: 'general' (sometimes
called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-
linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court of
California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017).  Here,
Plaintiff argues that this Court has specific personal jurisdiction over the
Foreign Defendants.

United States District Court
Central District of California

To establish specific personal jurisdiction, Plaintiff must show that (1) the defendant "'purposefully direct[ed] his activities' toward the forum" or "purposefully avail[ed] himself of the privilege of conducting activities in the forum," (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020), cert. denied, 142 S. Ct. 76 (2021)*.  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Sher*, 911 F.2d at 1361.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  If the plaintiff successfully satisfies both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).  The Court examines each factor below.

First, Plaintiff must show the Foreign Defendants "purposefully direct[ed]" their activities at the United States.  *AMA Multimedia, LLC*, 970 F.3d at 1208 (9th Cir. 2020).  "Where allegedly tortious conduct takes place outside the forum and has effects inside the forum, [the Ninth] [C]ircuit has examined purposeful direction using an 'effects test' based on *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)."  (*Id.* at 1208).  "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  (*Id.* at 1209) (citations omitted).

12

Defendants committed an "intentional act" for purposes of jurisdiction if they had "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger v Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004).  Here, the Foreign Defendants concede that operating the XVideos website was an "intentional act."  (Dkt. 134, at 13).  The Court concludes that the first prong of the effects test is met.

Next, Plaintiff must show that the Foreign Defendants' operation of XVideos was "expressly aimed" at the United States.  The Ninth Circuit has previously considered what it means for out-of-state or foreign website operators to expressly aim their activities at a forum.  In *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, the Ninth Circuit noted that it has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."  647 F.3d 1218, 1229 (9th Cir. 2011).  The court found that "maintenance of a passive website alone cannot satisfy the express aiming prong," but operating a passive website "in conjunction with 'something more'—conduct directly targeting the forum—is sufficient."  (*Id.*) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010); *Rio Properties, Inc.,* 284 F.3d at 1020).  In determining whether "something more" is present, Courts consider factors including: "the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident."  (*Id.*) (citations omitted).

1

2        Plaintiff argues that WGCZ and NKL (and by proxy, all of the Foreign

3   Defendants) expressly aimed XVideos and Xnxx at the United States

4   because the websites are interactive and Defendants "seek and attract

5   consumers in the U.S. for commercial gain."  (Dkt. 141, at 7).  Plaintiff points

6   out that the websites "are written in English and use geo-fencing and

7   location-based advertising to collect data for, and target advertisements

8   specifically to, U.S. consumers;" and that 19% of the traffic to XVideos, and

9   19-24% of the traffic to Xnxx, comes from the United States.  (*Id.*).

10

11       The Ninth Circuit, however, rejected similar arguments in a recent and

12  factually similar case, *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th

13  Cir. 2020).  There, a producer and distributor of online adult entertainment

14  brought a copyright and trademark claim against the operator of

15  ePorner.com, an internationally available website that allowed users to

16  anonymously upload adult videos.  (*Id.* at 1204).  The operator of

17  ePorner.com was a citizen and resident of Poland.  (*Id.* at 1205).  Plaintiff

18  argued that ePorner was expressly aimed at the U.S. market because of, in

19  part, "(1) [Defendant's] use of geotargeted advertisements and the

20  purported corresponding U.S. revenue," and "(2) ePorner's U.S. viewer-

21  base, which comprises 19.21% of the site's total visitors . . . ."  (*Id.* at 1210).

22  The court disagreed.  First, it noted that ePorner lacks a forum-specific

23  focus because "the market for adult content is global," as evidenced by the

24  large proportion of ePorner users who were outside the United States.  (*Id.*).

25  The court then found that ePorner's geo-located advertisements did not

26  establish that the site was expressly aimed at the United States because

United States District Court
Central District of California

these advertisements were "always directed at the forum" where the viewer was located, meaning that "a viewer in the United States [would] see advertisements tailored to the United States while a viewer in Germany [would] see advertisements tailored to Germany." (*Id.*).  The court explained that, "[i]f such geo-located advertisements constituted express aiming, ePorner could be said to expressly aim at any forum in which a user views the website." (*Id.* at 1211).  The court concluded that plaintiff had not shown that defendant purposefully directed his activities at the United States.

The Court finds *AMA Multimedia* instructive here.  Plaintiff's allegations closely track those of the plaintiff in *AMA Multimedia*, in terms of the subject matter and functionality of the websites, the facts surrounding the percentage of website traffic coming from U.S. visitors (around 20%), and the websites' use of geo-located advertising.  The Court concludes that, like in *AMA Multimedia*, Plaintiff has failed to show that the Foreign Defendants expressly aimed their websites at the United States based on these facts.  Notably, Plaintiff has failed to acknowledge *AMA Multimedia* or attempt to distinguish that case in its papers.

Because Plaintiff is unable to establish that the Foreign Defendants purposely directed their activities to the United States, the Court lacks personal jurisdiction over them. [2]   Accordingly, the Court **GRANTS**

[2] The parties disputed the inclusion of certain Defendants in this lawsuit, as Defendants opposed Plaintiff's argument that WGCZ and NKL had an "alter ego" relationship with the other Czech Entity Defendants and the Pacauds. (Dkt. 134, at 9).  It was not necessary for the Court to decide that issue, because the Court lacks personal jurisdiction over WGCZ and NKL as a threshold matter.

United States District Court
Central District of California

1  Defendants WebGroup Czech Republic, a.s., WGCZ Holding, a.s., WGCZ

2  Limited, s.r.o., NKL Associates, s.r.o., Traffic F, s.r.o., GTFlix TV, s.r.o.,

3  FTCP, s.r.o., HC Media, s.r.o., FBP Media s.r.o., Stephane Michael Pacaud,

4  and Deborah Malorie Pacaud's Motion to Dismiss for Lack of Personal

5  Jurisdiction.[3]  (Dkt. 134).

6

7      The Foreign Defendants also filed separate Motions to Dismiss on

8  other grounds.  (Dkts. 135, 136).  The Court denies those Motions as moot.

9

10  **B.  The Server Defendants**

11     1.  Personal Jurisdiction

12      The Server Defendants—DigitalOcean, LLC, DigitalOceanHoldings,

13  Inc., and ServerStack, Inc.—which are United States companies, also argue

14  that the Court lacks personal jurisdiction over them.  (Dkt. 133, at 6).  In

15  Opposition, Plaintiff responds that 18 U.S.C. § 2255 contains a nationwide

16  service of process provision, which expressly establishes nationwide

17  personal jurisdiction for Plaintiff's claims brought under § 1591, § 2252, §

18  2252A, and § 2260.  (Dkt. 140, at 4).   Plaintiff further argues that the Court

19  should exercise pendent jurisdiction over any remaining claims not covered

20  by the service provision in § 2255.

21

22      § 2255 provides in relevant part that,

23      ───────────────

24      [3] In her Opposition, Plaintiff also requested leave to conduct jurisdictional
   discovery to prove the existence of an alter ego relationship between
   WGCZ, NKL, the other Czech Entity Defendants, and the Pacauds.  This

25  request is moot.  As discussed in footnote 2, *supra*, the Court lacks personal
   jurisdiction over WGCZ and NKL, meaning the Court would also lack per-

26  sonal jurisdiction over their potential alter-egos.

16

(a) Any person who, while a minor, was a victim of a vio-
lation of section 1589, 1590, 1591, 2241(c), 2242,
2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or
2423 of this title and who suffers personal injury as a
result of such violation, regardless of whether the injury
occurred while such person was a minor, may sue in
any appropriate United States District Court . . . .

As to service of process, the statute states:
In an action brought under subsection (a), process may be
served in any district in which the defendant--
(A) is an inhabitant; or
(B) may be found.

The Ninth Circuit has explained that, "[a] statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). "Further, '[a] federal court obtains personal jurisdiction over a defendant if it is able to serve process on him.'" (*Id.*) (citing *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)). In *Action Embroidery Corp.*, the Ninth Circuit examined the long-arm statute for federal antitrust suits, which, like § 2255, provides that "all process . . . may be served in the district of which it is an inhabitant, or wherever it may be found." 368 F.3d at 1177 (citing § 2255). The court concluded that this statute conferred personal jurisdiction over the antitrust defendant wherever it was properly served.

17

United States District Court
Central District of California

The Court agrees with Plaintiff that the service of process provision in § 2255 establishes nationwide service of process, and therefore nationwide personal jurisdiction, over the Server Defendants in relation to the § 1591, § 2252, and § 2252a claims.  This finding is consistent with the language of the statute and the holding in *Action Embroidery Corp.*  While Defendants argue that "[n]o court has ever applied § 2252(c) in this way," they fail to address the statutory language, and they also fail to cite cases in which courts declined to apply § 2252 in this way.  (Dkt. 146, at 1).

Having found this statute authorizes nationwide service of process, the next inquiry involves due process.  "In a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is . . . 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'"  *Action Embroidery Corp.*, 368 F.3d at 1180 (citing *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985).  As New York and Delaware corporations operating in the United States, the Server Defendants clearly have acted within a district of the United States and caused foreseeable consequences here.  "Constitutional principles of due process are therefore satisfied, and personal jurisdiction over [Plaintiff's] . . . claims . . .  is proper."  (*Id.*).

2.   <u>Pendent Personal Jurisdiction</u>

While § 2255 establishes personal jurisdiction over some of Plaintiff's claims, it does not cover Plaintiff's § 1595 claim or her state law claim.

Plaintiff argues the Court should exercise pendent personal jurisdiction over those claims, while Defendant argues that the Court should decline to do so.

"[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp.,* 368 F.3d at 1180.  "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." (*Id.* at 1180–81).  The decision to retain or dismiss pendent state-law claims is left to the discretion of the Court.  (*Id.*).

Here, the Court finds that Plaintiff's claims all arise out of the same nucleus of operative fact, and that concerns of judicial economy dictate maintaining the case in one forum.  The Court will therefore exercise pendent jurisdiction over Plaintiff's § 1595 claim and state law claim.

3.   Group Pleading

The Server Defendants next argue that the FAC violates the rule against "group pleading" because it fails to articulate particularized claims against each Defendant.  Plaintiff did not respond to this argument in her Opposition.

19

United States District Court
Central District of California

1    Federal Rule of Civil Procedure 8(d)(1) requires that each allegation

2  of a pleading "must be simple, concise and direct."  Fed. R. Civ. P. 8.  This

3  rule is "designed to provide defendant with fair notice of the claims against

4  them and the grounds on which those claims rest."  *Destfino v. Kennedy*,

5  No. CV-F-081269 LJO (DLBx), 2009 WL 1706095, at *4 (E.D. Cal. June 9,

6  2009), aff'd sub nom. *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011).

7  Where there are multiple defendants, courts have required that the

8  complaint state with particularity which allegations are attributable to which

9  defendants.  In *McHenry v. Renne*, for example, the Ninth Circuit upheld the

10  dismissal of a complaint on the grounds that it did not "properly notify

11  individual defendants of the allegations with which they are charged," as the

12  claims "vaguely refer[red] to 'defendants' or 'other responsible authorities.'"

13  84 F.3d 1172, 1175 (9th Cir. 1996).  In *Destfino v. Kennedy*, a court similarly

14  held that a complaint against multiple defendants, some of whom had been

15  dismissed, created "ambiguity and uncertainty," because it did not make

16  clear which allegations were specific to the remaining defendant.  2009 WL

17  1706095, at *5.  The court noted that "the current state of the pleadings, in

18  light of the dismissed defendants, unnecessarily complicates the matter with

19  superfluous pleadings."  (*Id.*).

20

21    The Court agrees with the Server Defendants that the FAC fails to

22  sufficiently attribute allegations to them, especially in light of the impending

23  dismissal of the Foreign Defendants.  The FAC comingles the Defendants

24  together throughout much of the pleading, without identifying which entities

25  are responsible for the conducted underlying the claims.  For example,

26  Plaintiff alleges that:

20

United States District Court
Central District of California

> Defendants are a coordinated group of individuals and companies which knowingly benefit from child sex trafficking by, among other things, developing, analyzing, and monetizing uploaded content and/or manipulating search terms and media content on XVideos and/or developing content and systems to drive the continued uploading and consumption of CSAM for profit.  (FAC, at 3).

> Defendants use sophisticated technology to track and promote the types of material that drives traffic and profits to its websites. Defendants' conversely refuse to implement reasonable protections known to mitigate or prevent CSAM, including but not limited to employing age or consent verification measures. Instead, Defendants facilitate the anonymity of those child sex traffickers who upload it and anonymous communication among those criminals looking for CSAM, which ensures that the practice continues and grows Defendants' profits.  (*Id.* at 3-4).

Such allegations fail to specify each Defendant's culpability adequately.

Although a portion of the FAC is dedicated to the Server Defendants (pages 42-46), it still does not adequately identify the allegations against them.  Plaintiff alleges, for example, that ServerStack controls video encoding, thumbnail creation, and video playing for the XVideos website, but she fails to explain how those actions contribute to violations of § 1591

21

1    and the other claims.  There are few or no allegations that specifically relate

2    the Server Defendants to the claims in the lawsuit.

3

4        Likewise, many of the allegations against the Server Defendants rest

5    on, or are inextricably tied to, WGCZ and the Foreign Defendants. Given

6    that the Foreign Defendants will be dismissed, it is difficult to parse out the

7    conduct that the Server Defendants are responsible for alone.  For example,

8    Plaintiff alleges that she requested XVideos remove videos depicting her

9    abuse, and "XVideos would and should have notified the Server

10   Defendants, who would have the ability to capture, mark, identify, remove

11   and report said videos."  (FAC, at 44).  It is unclear how, if at all, this

12   allegation is attributable to the Server Defendants.  The FAC should be

13   redirected to focus on the Server Defendants' role in committing the alleged

14   violations.   As it stands, the FAC "unnecessarily complicates" the matter

15   with extraneous information that is not relevant or attributable to the

16   remaining Defendants.  *See Destfino,* 2009 WL 1706095, at *5.

17

18       The Court therefore **DISMISSES** the claims against the Server

19   Defendants **WITHOUT PREJUDICE.**

20

21                        **IV.    CONCLUSION**

22       The Court **GRANTS** Defendants' WebGroup Czech Republic, a.s.,

23   WGCZ Holding, a.s., WGCZ Limited, s.r.o., NKL Associates, s.r.o., Traffic F,

24   s.r.o., GTFlix TV, s.r.o., FTCP, s.r.o., HC Media, s.r.o., FBP Media s.r.o.,

25   Stephane Michael Pacaud, and Deborah Malorie Pacaud's Motion to

26   Dismiss for Lack of Personal Jurisdiction **WITH PREJUDICE**.  The Court

also **GRANTS** Defendants' ServerStack, Inc., DigitalOceanHoldings, Inc.,

and DigitalOcean, LLC's Motion to Dismiss **WITHOUT PREJUDICE**.  Any

amended complaint shall be filed not later than February 15, 2022.

**IT IS SO ORDERED.**

Dated:    1/5/22

Virginia A. Phillips
United States District Judge

United States District Court
Central District of California

23