# EXHIBIT B

1        **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3     **HONORABLE SHERILYN PEACE GARNETT, U.S. DISTRICT JUDGE**

4

5   JANE DOE,                              )
                                           )
6                        Plaintiff,        )
                                           )
7        v.                                )        Case No.
                                           )   CV 21-2428 SPG (SKx)
8   WEBGROUP CZECH REPUBLIC A.S., et al.,  )
                                           )
9                        Defendants.       )
    ───────────────────────────────────────)

10

11           **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
                       **MOTION HEARING**
12             **WEDNESDAY, MAY 8, 2024**
                       **1:38 P.M.**
13            **LOS ANGELES, CALIFORNIA**

14

15

16

17

18

19

20

21

22   ─────────────────────────────────────────────────

23   **MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
              FEDERAL OFFICIAL COURT REPORTER
24            350 WEST 1ST STREET, ROOM 4455
              LOS ANGELES, CALIFORNIA  90012
25                    (213) 894-2305

```
 1                        APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4       LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN &
         BARR
 5       BY:  SUSANNA L. SOUTHWORTH
              Attorney at Law
 6       315 South Baylen Street, Suite 600
         Pensacola, Florida  32502
 7       (253) 392-4409

 8       KAZEROUNI LAW GROUP, APC
         BY:  GIL MELILI
 9            Attorney at Law
         245 Fischer Avenue, Suite D1
10       Costa Mesa, California  92626
         (800) 400-6808
11

12   FOR THE DEFENDANTS:
13
         QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
14       BY:  MICHAEL E. WILLIAMS
              Attorney at Law
15       865 South Figueroa Street
         Los Angeles, California  90017
16       (213) 443-3000

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | WEDNESDAY, MAY 8, 2024; 1:38 P.M.                         |
|       | 2  | LOS ANGELES, CALIFORNIA                                   |
|       | 3  | -oOo-                                                      |
|       | 4  | THE COURTROOM DEPUTY:  Calling Item No. 3, Civil          |
| 01:38PM | 5 | Case 21-2428, Jane Doe versus WebGroup Czech Republic, a.s., |
|       | 6  | et al.                                                     |
|       | 7  | Counsel, please make your appearances, beginning          |
|       | 8  | with the plaintiff's counsel.                             |
|       | 9  | MS. SOUTHWORTH:  Good afternoon, Your Honor.              |
| 01:38PM | 10 | Susanna Southworth for plaintiff.                        |
|       | 11 | THE COURT:  Good afternoon.                               |
|       | 12 | MR. MELILI:  Good afternoon, Your Honor.  Gil Melili     |
|       | 13 | for plaintiff.                                            |
|       | 14 | THE COURT:  Good afternoon.                               |
| 01:38PM | 15 | MR. WILLIAMS:  Good afternoon, Your Honor.               |
|       | 16 | Michael Williams from Quinn Emanuel on behalf of defendants. |
|       | 17 | THE COURT:  Good afternoon.                               |
|       | 18 | MR. BONFIGLI:  Good afternoon, Your Honor.               |
|       | 19 | Dylan Bonfigli, also from Quinn Emanuel on behalf of      |
| 01:39PM | 20 | defendants.                                              |
|       | 21 | THE COURT:  Good afternoon.                               |
|       | 22 | All right.  So we're here on the remaining               |
|       | 23 | defendants' motion to dismiss.  My understanding of this  |
|       | 24 | matter, it was previously assigned to one of my colleagues that |
| 01:39PM | 25 | went up to the Ninth Circuit.  The Ninth Circuit found that, as |

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 01:40PM | 5 |

to WGCZ and NKL, defendants, that there was personal

jurisdiction.  And because the Court had not ruled on the other

defendants, it was remanded and then reassigned here for the

Court to address the other defendants who have now moved to

dismiss on seven grounds.

6    So I don't have a tentative for you.  It's the

7  defense's motion, if you want to begin.

8    MR. WILLIAMS:  Yes.  Thank you, Your Honor.

9    I know we did raise a number of arguments in our

01:40PM 10 motion, and I want to focus on a few that I think are the most

11  salient ones and obviously address any questions that the Court

12  may have.

13    The first is really with regard to the

14  undifferentiated group allegations with respect to the

01:40PM 15 defendants here.  And with respect to all of the remaining

16  defendants, all of which are the foreign defendants, other than

17  WGCZ and NKL which operate the websites at issue, there are no

18  factual allegations that tie them to any of the underlying

19  claims.

01:41PM 20    They have relied -- plaintiffs have relied on this

21  idea that, well, they're all part of this complex corporate

22  web.  But even the cases that they cite on this issue, there

23  are two cases from Judge Koh in the Northern District,

24  *Sebastian Brown Products*, *Adobe Systems*, and then also

01:41PM 25 *Marseglia* from the Southern District.

1    All of those repeat the same basic rule of law which

2    is that you can't make undifferentiated pleadings against

3    defendants.  You have to give defendants fair notice for

4    what -- what conduct they are accused of engaging in.  And,

01:41PM  5    here, there is none with regard to those defendants.

6    So we believe with regard to all of the remaining

7    foreign defendants, other than WGCZ and NKL, that those claims

8    need to be dismissed and at least leave to amend to the extent

9    plaintiffs are able to allege facts in good faith that they

01:42PM  10   believe would -- would show or tie their conduct to the

11   underlying causes of action.

12   THE COURT:  What about the argument that, because

13   this is such a complicated scheme, that jurisdictional

14   discovery would be helpful in that regard or, you know --

01:42PM  15   MR. WILLIAMS:  Sure.  So -- and just a little bit of

16   background on that.  So after the case came back from the

17   Ninth Circuit, we spoke with counsel for the plaintiffs about

18   the motions we intended to bring.  We had indicated we're going

19   to move for a lack of personal jurisdiction with regard to all

01:42PM  20   of the defendants because they're all based outside of the

21   country.  And then, also, we had a 12(b)(6) motion.

22   They indicated they wanted to take jurisdictional

23   discovery, which is something that they had -- we had offered

24   before the case went up to the Ninth Circuit.  They never took

01:42PM  25   us up on that.  But this time we said, sure, let us -- tell us

01:43PM

01:43PM

01:43PM

01:44PM

01:44PM

1    what you want to serve and we'll consider it on the personal

2    jurisdiction issue.

3         We stipulated and the Court signed off on the order

4    where we would hold off on briefing the personal jurisdiction

5    issue until that jurisdictional discovery is completed.  And

6    there is Supreme Court and Ninth Circuit authority that allows

7    the Court to hold off on deciding the jurisdictional issue if

8    it can rule on 12(b)(6) grounds.

9         But the jurisdictional discovery only goes to that

10   issue.  It is -- it's tied to the personal jurisdiction of

11   those defendants and is limited in that regard.

12        You can't use jurisdictional discovery to support

13   your factual allegations against the defendants.  That violates

14   *Twombly* and *Iqbal* which says that Rule 8 just doesn't unlock

15   the doors to discovery to allow you to discover facts to plead

16   your claim.  You need to have a good faith basis.  You need to

17   have facts to support their involvement.  And they simply have

18   none.

19        So we don't think that personal jurisdiction or the

20   issue of jurisdictional discovery should be allowed to bolster

21   factual allegations to support a claim under 12(b)(6).

22        With regard to -- and, Your Honor, of course,

23   Judge Phillips who had the case before recognized this issue

24   with regard to the undifferentiated pleadings gave them the

25   opportunity to amend to prove -- to allege additional facts and

**UNITED STATES DISTRICT COURT**

|       |                                                                                  |
| ----- | -------------------------------------------------------------------------------- |
| 1     | they decided not to, which is why the case was dismissed with                    |
| 2     | prejudice, at least as to some of the defendants because -- the                  |
| 3     | U.S.-based defendants because they did not take advantage of                     |
| 4     | that leave opportunity to come forward with facts to show the                    |
| 5     | role of these other defendants.                                                  |
| 6     | THE COURT:  What about the argument that requiring                               |
| 7     | the remaining defendants to -- or the plaintiffs to plead with                   |
| 8     | respect to the remaining defendants more specifically would                      |
| 9     | effectively impose a heightened pleading standard onto the                       |
| 10    | allegations with regard to the remaining defendants?                             |
| 11    | MR. WILLIAMS:  Your Honor, that assumes that there's                             |
| 12    | some specificity already included in the Complaint as to them.                   |
| 13    | And there isn't.  I mean, they -- for most of these defendants,                  |
| 14    | they allege where they're located and some unrelated role that                   |
| 15    | they may have that they -- you know, they allege that two of                     |
| 16    | the individuals are owners, but all they really allege is that                   |
| 17    | they are based in France or the Czech Republic.  They allege                     |
| 18    | that a number of these companies have some, you know,                            |
| 19    | affiliation, but they're all separate corporate entities.  And                   |
| 20    | they have not alleged facts under Ninth Circuit authority to                     |
| 21    | establish alter ego.                                                             |
| 22    | And those facts do need to be pled with specificity.                             |
| 23    | We cited -- I think it's the *Garretson* case from the                           |
| 24    | Central District that talks about the allegations needed to                      |
| 25    | establish alter ego liability can't be based on conclusory                       |

01:44PM (line 5)
01:45PM (line 10)
01:45PM (line 15)
01:45PM (line 20)
01:46PM (line 25)

**UNITED STATES DISTRICT COURT**

assertions.  You have to have specific facts.  You have to show

not only the unity of interest but, also, an inequitable

result.  And, here, they just have none.

    What they did is they went out and named literally

01:46PM every defendant that they can find that had some connection, no

matter how tenuous, with websites and added them all as

defendants.  And to force these foreign entities to come

forward and defend when they don't even know what role they

supposedly played is not how it really works, particularly

01:46PM under *Twombly* and *Iqbal*.

    THE COURT:  Not to beat a dead horse, but wouldn't

the jurisdictional discovery help in that regard to the extent

that there's some alter ego to sort of unpack what the various

relationships is between the various defendants, if there is

01:47PM one?

    MR. WILLIAMS:  I don't agree with that, Your Honor,

for this reason.  It's because jurisdictional discovery is

whether or not they have taken steps to purposely avail

themselves or purposeful direction with regard to California.

01:47PM It's not whether or not they have engaged in some aspect of

trafficking or beneficiary liability with regard to the

underlying causes of action here.

    THE COURT:  That assumes -- well, you are the

defense.  So I was going to say that assumes what the

01:47PM jurisdictional discovery would show as opposed to, like, here's

the relationship this party has, not this case but in general.
This party has a contact with California because it is the
distributor through this party and -- and through the
jurisdictional discovery, some aspect of the relationship is

01:47PM  revealed.  Are you saying not here because they're separate
entities?

MR. WILLIAMS:  Well, it's not here.  Yes, they're
separate entities.  But, also, whether or not they have
contacts with the U.S. does not establish whether or not they

01:48PM  have participated in some unlawful conduct.

And before you go out and name a bunch of defendants
in a claim -- in causes of action accusing them of distributing
child pornography and sex trafficking, which are heinous
allegations, you have to have some factual basis to think that

01:48PM  they had something to do with these allegations.  And there
simply are none in the Complaint.

THE COURT:  Okay.

MR. WILLIAMS:  I next want to address Section 230.
And, um -- which obviously plays a large role here.  And,

01:48PM  first, under the Ninth Circuit's decision in *Doe v. Reddit*, the
plaintiffs here with respect to the trafficking claims have to
show that the websites -- or the defendants generally, but I'll
focus on the websites because we think those are the primary
actors here.

01:49PM  The websites engaged in some criminal violation

themselves of trafficking.  *Reddit* held that under Section 230, in order to state a claim for a trafficking violation, a civil claim under 1595, that you have to show that the website's conduct itself constituted a violation of Section 1591, which is the criminal statute.

There are no allegations in the First Amended Complaint that would remotely suggest that these websites somehow actively enticed or induced or solicited the plaintiff or anyone else with regard to the alleged trafficking.

And I think plaintiff's point -- and I think it's a fair one -- is that, well, *Reddit* came down while the case was on appeal.  They have not had an opportunity to amend in light of that.  And we understand.  I mean, we think that's a fair enough point.

But the -- the main issue for today is that the First Amended Complaint does not contain allegations that would be sufficient to allege a violation of the trafficking claims under -- under *Reddit*.

They -- focusing, again, on the trafficking claims, they have raised the argument that, well, they -- Section 230 should not apply because they should be considered -- or the website should be deemed a content creator or an information content provider.  And we don't believe those arguments are sufficient in terms of the allegations in the First Amended Complaint for these reasons.

1        So, you know, in order for -- to get around

2   Section 230, the Ninth Circuit has declared that you have to be

3   a content creator in that you materially contribute to the

4   illegality of the content.  And that is explained in the

01:51PM  5   *Roommates.com* case and more recently in the *Gonzalez versus*

6   *Google* case that came down.

7        THE COURT:  How do you differentiate this website

8   from the *Roommates* case?

9        MR. WILLIAMS:  So in *Roommates*, the -- in order for

01:51PM  10  the users to log in and create a profile, they were required to

11  fill out certain information, and that information that they

12  were required to provide violated the Fair Housing laws.  So

13  with regard to sex, sexual orientation, et cetera.

14        And the Court held that the website itself is

01:51PM  15  encouraging or requiring the submission of illegal content in

16  that regard.

17        Here, and no different than the case in *Reddit* or

18  the case in *Gonzalez v. Google*, it is a website that third

19  party users can post information to, videos.  And it is up to

01:52PM  20  that user to decide what to post.  Our -- the web -- the

21  WebGroup, WGCZ, and NKL had no role in creating the videos,

22  they had no role in the underlying alleged trafficking, and

23  they had no role in uploading the content to the site.

24        THE COURT:  I guess I need to know a little more

01:52PM  25  about how the website operates because in the *Roommates*

**UNITED STATES DISTRICT COURT**

situation, my understanding is that the website asked the

questions.  And then the website basically sorted the

information and spewed out information about *Roommates* and that

sort of thing.  And the Court held that that -- that it was

01:52PM    asking for illegal information and so was sort of participating

in that way.

Here, how does the website operate?  Is it such that

people who want to upload generally pornography can just upload

it and that would include child pornography?  And does the

01:53PM    website provide any tools to sort and to -- like if somebody

were to go in and search, you know, I'm looking for underaged

children engaged in blah, blah -- or you know, does the website

have any sort of interactive tools within the meaning of the

*Roommates* and *Yahoo!* and all this -- you know, those sorts of

01:53PM    cases, that would put the website closer to one of those cases,

whether it be *Yahoo!* -- I mean, this is really a question for

plaintiffs.  But, you know, how does it operate?

MR. WILLIAMS:  Sure.  Well, and -- in the -- I think

the most general sense is that the website does allow --

01:54PM    it's -- in the past it's been referred to as a tube site,

similar to YouTube, where people can go on and post their own

content to the site.  Other people can log in and they can

run -- there's a search bar, and they can run searches.

But the tools that the website uses do not -- you

01:54PM    know, they treat all content the same way.  So in terms of

UNITED STATES DISTRICT COURT

1    whether it's lawful adult pornography, consensual pornography,

2    or anything else that someone is posting, it does not view them

3    in a different way and it is not doing anything to encourage

4    child pornography.

01:54PM    5         In fact, one very salient fact is -- and this is

6    consistent with the *Google*, *Gonzalez* case -- their terms of

7    service expressly prohibit it.  They make it very clear, we do

8    not want it.  Do not put it up here.  We will cooperate with

9    law enforcement.  We will report you.  There's a reporting bar

01:55PM    10   under every video on there that people can report.

11        And so this is not a situation where they're

12   encouraging or -- or trying to provide guidance to it.

13        And so what the -- what the *Google* case said, the

14   most recent pronouncement by the Ninth Circuit, was if you're

01:55PM    15   providing neutral tools that anyone can use, including people

16   looking for terrorist videos, which was the case in *Google*, or

17   people unfortunately looking for child pornography, which is --

18   which are the allegations here, it's using the same tools.

19        It will -- users will tag their video with certain

01:55PM    20   names and it all gets, you know, put up into the same bucket

21   without trying to encourage or solicit information that

22   contributes to the illegality.  And that's the key.

23        THE COURT:  So, in effect, what you're saying is the

24   tags are user created as opposed to the website providing

01:56PM    25   particular types of tags that users can use to find what

```
 1    they're looking for.
 2           MR. WILLIAMS:  Yes.  That's my understanding of how
 3    the -- the tags work in terms of -- and searches are all done
 4    by the individual.
 5           THE COURT:  Okay.
 6           MR. WILLIAMS:  And so, you know, with regard to does
 7    the website contribute to the illegality, here, to the extent
 8    the content is CSAM, it is illegal from the moment it's
 9    created.  And it's -- and that our client has nothing to do
10    with that -- that creation and there's no allegations to that
11    effect.
12           So in -- if you look at the allegations that the
13    plaintiff relies on here, they're all very similar to the
14    allegations that the plaintiffs in the Gonzalez v. Google case
15    raised and also the allegations in the Doe v. Reddit case.
16           And in Doe v. Reddit -- although, the Ninth Circuit
17    took up the issue of the standard under Section 230 with -- in
18    connection with the FOSTA exception.  Judge Selna in his
19    original District Court ruling rejected the same types of
20    arguments that are being made here and with regard to content
21    creator.
22           There, they were talking about how Reddit encourages
23    child pornography, how there's so much child pornography on
24    there, people are out there looking for it, they fail to take
25    sufficient actions, all of the same types of allegations that
```

they raise here.

And what Judge Selna found -- and this was actually
before the *Gonzalez v. Google* case came up but based on
Ninth Circuit authority that those are all neutral tools that
01:57PM    apply to all content, not specifically CSAM.

And, therefore, these are not -- the fact that third
parties are uploading it and bad people are misusing the system
to -- to look for illegal content does not expose the website
to liability.  230 protects against that.

01:58PM    And one other, I think, sort of fallacy that is
going on here and it's alluded to in -- in plaintiff's papers,
but that somehow these websites should be treated differently
because it's an adult content or it's -- it's a
pornography-based website.  Well, again, in the United States,
01:58PM    pornography, as long as it's consensual and involve -- not
involving minors, it's lawful.

The reality is -- and this is something that is
publicly available.  So NCMEC, the National Center for
Missing & Exploited Children, it talks about the reports that
01:58PM    people provide websites.  U.S.-based websites have to provide
reports of all the CSAM that they detect, they become actually
aware of.

So the numbers for Facebook -- Facebook is reporting
numbers in the millions every year.  Reddit, you know, hundreds
01:59PM    of thousands.

1    I mean, if you look at how some of these normal

2    websites that you would think of, Twitter, Reddit, Snap,

3    Facebook, they're awash in child pornography.  Unfortunately,

4    this is -- this is not a problem that is just on an adult

01:59PM    5    website.  It is everywhere.

6    And, of course, the allegations have to be taken as

7    true, the factual allegations have to be taken as true.  But

8    they -- they ignore a lot of the measures that our clients have

9    taken to stop and prevent and detect this.

01:59PM    10    But the bottom line is under Section 230, they have

11    to plead a criminal violation to get around it that the website

12    itself engaged in a criminal violation.  There are no

13    allegations to support that.  And we believe Section 230 would

14    apply, not only to the trafficking claim but to all of the

01:59PM    15    claims.

16    And briefly, on the possession -- the receipt and

17    distribution of child pornography claim, which is 2252 and

18    2252(a), I believe it's 2260, plaintiffs make an argument that

19    Section 230 should not apply to -- to those types of claims

02:00PM    20    because they're seeking to punish WebGroup and NKL for their

21    own bad acts as opposed to -- for their own receipt and

22    distribution of child pornography.

23    Well, that argument was rejected by the

24    Ninth Circuit in the *Doe v. Twitter* case where the Court held

02:00PM    25    that Section 230 does, in fact, protect against claims for the

receipt and distribution of child pornography.

So we -- we believe, as we've argued in the motion, that Section 230 covers all of the allegations here and --

THE COURT:  Can you briefly address the issue of revenue sharing or --

MR. WILLIAMS:  Sure.  Happy to, Your Honor.

So, um, the -- revenue sharing are the -- came up in the *Gonzalez v. Google* case.  And the Court there distinguished that.  But the most important thing to keep in mind is that case involved claims under the Antiterrorism Act.

And one of the elements of the claim was that -- whether Google was providing substantial assistance to these terrorist organizations, which would give rise to liability. And the Court said that sharing revenue with a terrorist group is not liability based upon, you know, the publication by some third party.  That's your -- your action.  And it would go to the actual element of that particular claim.

Now, the Court ultimately found that there wasn't enough -- there weren't sufficient allegations to support that. But it did carve out this revenue-sharing doctrine because revenue sharing with a terrorist organization is illegal by virtue of the statute.

So what the Court said is you could still have the same content on Google's website and just not do the revenue sharing and you would no longer -- the claim would no longer be

a viable one because you're not providing assistance to a

terrorist group.

Here, in contrast, whether or not there's revenue

sharing with people who post content on our clients' websites

02:02PM  doesn't change the illegality of the content.  The content is

illegal no matter what.  Whether or not they exchange or

provide some type of revenue sharing is not going to change the

fact that, if it's CSAM, it's illegal no matter what, and our

client did not contribute to that illegality.

02:02PM  Um, in moving along, Your Honor, the last major

point I want to address is the extraterritorial point because

all of the remaining defendants are located outside of the

country.  And under the TVPRA, the trafficking statute, it only

provides for a limited reach of extraterritorial effect.

02:03PM  So Section 1596 talks about the extraterritorial

reach of the trafficking statutes.  And significantly, it is

limited to a -- an offense.  It says that the -- the statute,

1591, which is the criminal statute, will only apply

extraterritorially if the offender is a U.S. resident or is

02:03PM  otherwise present in the U.S.

It does not allow for extraterritorial reach for a

civil claim under the trafficking statute.  1595 is not

identified in that statute as one of the statutes that allows

for extraterritorial reach.

02:04PM  And as -- at least one Court has found in

*Doe v. Apple*, which we cite, that that extraterritorial reach only applies to a criminal violation.  It talks about an offense.  So the U.S. could bring an action against an offender who is physically present in the U.S. or -- or resident in the U.S.  But there's no application for a civil claim.

And even if you could apply it to a civil claim, none of the defendants are present in the U.S., as their Complaint makes clear.  They all identify them as being foreign defendants.

So as a separate independent basis for granting the motion is the fact that all of these defendants are outside the extraterritorial reach of the trafficking statute.

I believe we've -- we've addressed the other issues in there in terms of the state court claim and individual liability for the officers that are identified.  But I'm happy to address any other questions that Your Honor has.

THE COURT:  I don't believe I have any more questions.

MR. WILLIAMS:  Thank you.

And just reserving any -- any rebuttal to the plaintiffs.

THE COURT:  Sure.

MR. WILLIAMS:  Thank you.

THE COURT:  Thank you.

Plaintiffs?

1           MS. SOUTHWORTH:  Good afternoon, Your Honor.  May it

2    please the Court.

3           Your Honor, I'm not here on behalf of Jane Doe

4    responding to defendants' motion to dismiss.  And so I'd like

02:06PM  5    to go ahead and begin with the issue of multiple defendants,

6    Your Honor, and the jurisdictional discovery issue.

7           I want to emphasize that jurisdictional discovery

8    will only go to jurisdiction -- the jurisdictional issues and

9    that we -- it's needed in this case.  It's needed in this case

02:06PM  10   because of the complex series of corporate relationships

11   involved among the defendants per *Spinedex Physical Therapy*

12   *USA*, that this -- when a Complaint refers to multiple

13   defendants that have a complex series of corporate

14   relationships, as we have here, that jurisdictional discovery

02:06PM  15   is warranted and that the fair notice requirements are met

16   under Rule 8.

17           And, in fact, too, in the Northern District of

18   California, the *Sebastian Brown Products* case, Your Honor, the

19   Courts found that a Complaint that gives defendants fair notice

02:07PM  20   is such where the Complaint refers to various defendants

21   collectively as -- as happened in this case.  But

22   jurisdictional discovery is necessary in order to determine --

23   to sort of parse that out.  And, in fact, there is pending

24   discovery that plaintiff has served on defense.

02:07PM  25           So it certainly -- it is warranted.

02:08PM     1          In addition, Your Honor, with regard to that issue,

2    um, plaintiff would like to note that, um, the plausibility

3    standard here in terms of defeating a motion to dismiss is that

4    the plaintiff alleges sufficient facts in the face of the

5    Complaint to bring, you know, plausible claim of relief.

6          And in this instance -- and we have this

7    interrelatedness of corporations, um, that -- and -- and

8    bringing in, um, *Rivera* and *Bravado*, those cases, Your Honor,

9    that it is proper to maintain a corporate executive as a

02:08PM    10    defendant where the plaintiff is alleged, in this case the

11    Pacauds, that they're founders and majority shareholders and

12    executives of the WebGroup Czech Republic.

13          So that alter ego argument that they founded and

14    developed the WebGroup Czech and they have -- they're

02:08PM    15    decision-makers.  They have knowledge and control over all

16    aspects.  So that's *Rivera*.

17          And then in *Bravado*, in that case, Your Honor, the

18    Court did find that the plaintiff sufficiently pled allegations

19    to suggest the executives participated in the illegal actions

02:09PM    20    or bad acts, um, in that the allegations were sufficient to

21    show those executives' authorization of the unlawful acts.  And

22    those allegations are in this Complaint here, Your Honor.

23          And so based on the case law, the plaintiffs have

24    sufficiently alleged facts to meet that plausibility standard.

02:09PM    25    And if not, then -- the plaintiff does ask, Your Honor, that

|  | 1 | jurisdictional discovery will take place, um, such that, |
|---|---|---|
|  | 2 | consistent with this Court, that the Court can deny defendants' |
|  | 3 | motion without prejudice with leave to renew after the |
|  | 4 | completion of jurisdictional discovery.  And that's *Laser* |
| 02:10PM | 5 | *Spallation Techs, LLC, v. The Boeing Company*.  And that's this |
|  | 6 | court, Your Honor, a decision rendered February 1st, 2024. |
|  | 7 | So there's actually a whole slew of case law under |
|  | 8 | Footnote 23, page 25 of plaintiffs' opposition brief that -- |
|  | 9 | for case law that supports jurisdictional discovery.  And the |
| 02:10PM | 10 | multiple -- the fact that multiple defendants were pled |
|  | 11 | collectively. |
|  | 12 | Moving on to the CDA 230 argument, Your Honor.  So I |
|  | 13 | do want to make sure that the -- Your Honor, note that this |
|  | 14 | case is distinguishable from *Reddit*.  This case is |
| 02:10PM | 15 | distinguishable from *Reddit*.  And *Reddit* is about a beneficiary |
|  | 16 | liability claim.  And in this case, the plaintiffs have alleged |
|  | 17 | factual allegations to support a claim for direct liability |
|  | 18 | under 1591. |
|  | 19 | In addition, unlike *Reddit*, the specific subject |
| 02:11PM | 20 | matter and primary use of the websites at issue in this case |
|  | 21 | are about the promotion/encouragement of child pornography. |
|  | 22 | That is the main aim of these websites, and that is not the |
|  | 23 | case in -- with *Reddit*. |
|  | 24 | In fact, unlike *Reddit*, plaintiff has clearly |
| 02:11PM | 25 | alleged defendants' knowledge of that CSAM on the websites, |

      1    that there were a lack of safeguards in moderating the content

      2    and keeping the CSAM off.  And there's aspects of defendants'

      3    business model that encourage and actually capitalize on CSAM

      4    that supports a 1591 claim.  So this case is distinguishable

02:11PM      5    from *Reddit*.

      6            But, Your Honor, if there's any question on that, we

      7    would ask that the plaintiff be able to amend the Complaint

      8    because Reddit's holding came after plaintiff had filed her

      9    Complaint, Your Honor.

02:12PM     10            So this case is distinguishable.  It's more like --

     11    if I may, Your Honor, the case of *Omegle*.  It is like the case

     12    *A.M. v. Omegle.com, LLC*.  It came out of the District Court of

     13    Oregon in 2023.  And those facts, Your Honor, are parallel,

     14    *Omegle*, and you'll see that on page 15 of the response brief.

02:12PM     15            In fact, in this case, the plaintiff alleged more

     16    facts than -- to show this promotion/encouragement of CSAM,

     17    more so than what was alleged in *Omegle*.

     18            And *Omegle* was a case in which the Court did find

     19    that this -- or found that there was a claim for direct

02:12PM     20    liability in terms of 159- -- or in terms of 1591 and in terms

     21    of the promotion/encouragement of CSAM.

     22            In this case, the First Amended Complaint has

     23    adequately alleged things that -- that show that

     24    promotion/encouragement of CSAM in terms of the voluminous CSAM

02:13PM     25    on the websites, the failure to moderate and call out illegal

```
 1    content, profiting, revenue sharing, which is one factor,

 2    Your Honor.  Revenue sharing is one factor.

 3               THE COURT:  Can you get back to failure to moderate,

 4    in terms of what exactly are you arguing that the defendants,

 5    as content -- well, as providers have a duty to do what?

 6               MS. SOUTHWORTH:  So they -- so their duty is -- in

 7    terms of the direct liability claim under 1591 is that they are

 8    uploading -- they are uploading this content and -- and adding

 9    content to it that promotes and encourages CSAM by way of

10    labels and titles for the videos and tags and thumbnails,

11    which, by the way, Your Honor, every time a thumbnail is

12    created, a thumbnail is a new file, it's a new hash value.

13               THE COURT:  So you disagree with the defendants in

14    the sense that this is not -- the people who are uploading the

15    information are -- are not the people who are creating these

16    thumbnails, et cetera.  It is the defendants who are adding

17    information?

18               MS. SOUTHWORTH:  Yes, Your Honor.  Yes, Your Honor,

19    in terms of the thumbnail creation.

20               And this is part of the -- the scheme of, um,

21    promoting and encouraging the CSAM that -- and creating a

22    thumbnail that it's -- which is a new hash value and then using

23    that to advertise for users to upload more CSAM.

24               THE COURT:  Okay.  So you're saying that the

25    defendants are advertising for users to upload child
```

02:13PM (line 5)
02:14PM (line 10)
02:14PM (line 15)
02:14PM (line 20)
02:15PM (line 25)

pornography?

MS. SOUTHWORTH:  Yes, Your Honor.  Yes, Your Honor. And in that way, there is a material contribution to the illicit -- or unlawful content.

02:15PM    THE COURT:  And how are they advertising allegedly for more uploading of child pornography?

MS. SOUTHWORTH:  So, Your Honor, my understanding is that this revenue-sharing arrangement as a -- a user can sort of contract into that and -- and then -- so then the more CSAM

02:15PM    that is uploaded, that is consistent with advertising -- that they -- that the -- that is part of that revenue-sharing arrangement -- so thumbnails would be used in sort of the advertising -- advertising piece.

THE COURT:  I'm confused.

02:16PM    MS. SOUTHWORTH:  Okay.  And this is something, Your Honor, that the -- the discovery is needed in order to --

THE COURT:  But that's not jurisdictional discovery.

MS. SOUTHWORTH:  True.

THE COURT:  That goes to the merits of your claim.

02:16PM    MS. SOUTHWORTH:  Yes, Your Honor.

THE COURT:  Assuming that some form of jurisdictional discovery is allowed and performed, that wouldn't necessarily address this particular issue in terms of how the website itself works.  And what I understand you to be

02:16PM    arguing here is that the defendants are affirmatively doing

something that adds to the child pornography and encouraging

and advertising for --

            MS. SOUTHWORTH:  Yes.

            THE COURT:  -- child pornography.

02:16PM    MS. SOUTHWORTH:  Yes, Your Honor.  Yes, Your Honor.

So in terms of creation of tags and titles and

categories and search -- search suggestions that are optimizing

views --

            THE COURT:  And what sort of --

02:17PM    MS. SOUTHWORTH:  -- and monetization of videos.

            THE COURT:  What sort of factual allegations?

            MS. SOUTHWORTH:  So, Your Honor, those are -- those

are outlined on page 15 in Footnote 12 of the opposition.  And

there -- and every page from the First Amended Complaint that

02:17PM    includes that -- that -- that item of material contribution to

the unlawful content is outlined there.

            And so it's -- it's -- putting all these multiple

factors together, consistent with the case that would -- that

is probably most on point is the *Doe v. Mindgeek* case in which

02:17PM    all of these factors put together, which we see here in this

Complaint --

            THE COURT:  I guess what I'm trying to get at is

that -- I think -- I think one of the strongest arguments that

the defense have made relates to their immunity -- or potential

02:18PM    immunity as -- under 230(c)(1).  And what they're saying is

```
  1    pretty straightforward in terms of -- you're suggesting that

  2    they are doing something other than -- well, they on their own

  3    are -- are engaging in conduct that is not immune under

  4    230(c)(1).

  5            MS. SOUTHWORTH:  That's correct, Your Honor.  Per

  6    Doe v. Mindgeek, CDA 230 does not shield owners or operators.

  7    In that case -- Pornhub, owners and operators are not shielded

  8    from plaintiffs' sex trafficking and child pornography claims.

  9    Because when these five factors put together that we see in

 10    Doe v. Mindgeek, which we also see in this case, facilitated

 11    the user's access to child pornography and encouraged it.

 12            THE COURT:  Which are?  The five factors are what?

 13            MS. SOUTHWORTH:  Yes, Your Honor.

 14            So establishing guidelines for categories, tags, and

 15    titles, that -- that direct -- that direct traffickers, um,

 16    used to create and promote child pornography to target the

 17    right fans.

 18            Number 2, knowing that child pornography's

 19    repeatedly posted on its platforms, sharing proceeds of such

 20    content with traffickers, the defendants have relationships

 21    with using a VPN, and/or torrent site to anonymize the web

 22    traffic, making it difficult for law enforcement to locate

 23    child pornography producers.  And developing private messaging

 24    systems so that traffickers can exchange child pornography on

 25    the site and evade law enforcement.
```

02:18PM (line 5)
02:19PM (line 10)
02:19PM (line 15)
02:19PM (line 20)
02:20PM (line 25)

1    So all these factors are not -- are not de minimis.

2    They are a material contribution to the illegality, the

3    unlawful content on the site.  And those facts are outlined in

4    terms of -- and they're cited -- where they're cited in the

5    Complaint, Your Honor, on page 13 of the opposition brief.

6    So putting those together, the plaintiff is not

7    alleging -- not trying to hold defendant accountable as a

8    publisher but, rather, as a content provider, which puts these

9    platforms outside of CDA 230, immunity.

10    THE COURT:  And as a content provider, because they

11    are providing these tags and --

12    MS. SOUTHWORTH:  And thumbnails.  So a thumbnail,

13    again, Your Honor, being a -- a system image that represents a

14    larger one.  So, say, a user uploads an image and then the --

15    the operator of the website can -- can -- will create a smaller

16    image of that larger image.  That's a thumbnail, which is not

17    the same.  It's a new file, which has a new hash value, which

18    has a unique identifier.  It's a digital fingerprint.  It's

19    a -- it's a new --

20    THE COURT:  Can I stop you for a second?

21    MS. SOUTHWORTH:  Yes, Your Honor.

22    THE COURT:  I'm going to try to repeat back what you

23    said and see if I understand it.

24    MS. SOUTHWORTH:  Yes, Your Honor.

25    THE COURT:  User uploads child pornography.  By

```
 1    virtue of the defendants' website that allows the user to take
 2    that child pornography image and make it smaller, you're saying
 3    that the defendants have now created child pornography.
 4              MS. SOUTHWORTH:  Yes, Your Honor.
 5              THE COURT:  Okay.
 6              MS. SOUTHWORTH:  Yes.  Yes.  It's a different file.
 7    It's a new file.  It's not -- it's not the same.  It's a --
 8    it's representative of the larger file, but it's a -- it's an
 9    additional item of child pornography.
10              THE COURT:  So, in effect, a second image.
11              MS. SOUTHWORTH:  Yes, Your Honor.  Yes, Your Honor.
12    And it's -- but this is one of many -- so putting these factors
13    together, as the Court did in Doe v. Mindgeek, to not shield --
14              THE COURT:  But wouldn't that be true of every
15    website?  I mean, pretty much there's software generally,
16    whether it be Google or any other software that allows you to
17    take an image and, well, quite, frankly, you know, those --
18    anything that allows you to copy an image and edit it and make
19    it smaller or bigger or add something to it, that would be
20    creating more child pornography.  And you're saying that's
21    enough under case law.
22              MS. SOUTHWORTH:  In this case, yes, because the
23    entire aim of this website is child pornography.  That is the
24    aim.
25              THE COURT:  How can -- well, so it's pornography.
```

02:21PM (line 5)
02:21PM (line 10)
02:22PM (line 15)
02:22PM (line 20)
02:22PM (line 25)

**UNITED STATES DISTRICT COURT**

1          MS. SOUTHWORTH:  Well -- and so, unfortunately,

2     it's -- the child pornography that is -- that sells, that is

3     going under the radar by way of these -- the VPNs and the

4     torrent sites to anonymize that web traffic.  It's -- so that

02:23PM  5     the very aim or -- or, you know, of this website is what

6     distinguishes it from, for example, *Reddit*.  And --

7          THE COURT:  Where do you get that aim from?  And --

8     and is aim distinguishable from just pornography?

9          MS. SOUTHWORTH:  So it's taking all of those factors

02:23PM 10     together and looking at a case like *Doe v. Mindgeek* or *Omegle*

11     where there is this -- this -- this knowledge, this knowledge

12     piece that's also, um, very important in which case law

13     demonstrates that -- so circumstantial evidence can provide

14     sufficient -- a sufficient basis to show that the defendants

02:24PM 15     did have knowledge of their -- so in this case, their

16     possession even, their possession and receipt of child

17     pornography.

18          THE COURT:  I guess what's happening is we're

19     talking past each other because I'm in solid 230(c)(1) land,

02:24PM 20     immunity, and you're in -- you're somewhere else and conflating

21     some of what I'm saying.

22          MS. SOUTHWORTH:  Yes, Your Honor.

23          THE COURT:  But --

24          MS. SOUTHWORTH:  So -- and I'm bringing in the

02:24PM 25     direct liability claim as a -- as a side note, Your Honor,

```
 1   because FOSTA-SESTA is an exception to the CDA 230 immunity,

 2   which is both -- which -- which applies here and doesn't.

 3           It applies here because the -- the mens rea

 4   knowledge is -- is -- is clear -- or the facts -- enough

 5   circumstantial evidence alleged in the Complaint to show that

 6   mens rea to hold these -- these platforms accountable for

 7   their -- their possession of CSAM and their receipt and

 8   possession of the CSAM.

 9           And so in that way, FOSTA-SESTA, they fall into that

10   exception.  But, in the other hand, FOSTA-SESTA, which is,

11   again, an exception to CDA 230, we don't need it here because

12   we're holding them accountable as content providers, which

13   takes them out of --

14           THE COURT:  Based on the thumbnails that are

15   uploaded, basically.

16           MS. SOUTHWORTH:  One of -- of multiple factors,

17   again looking at Doe v. Mindgeek.

18           THE COURT:  So if I had child porn and I wanted to

19   print it and I uploaded it to Shutterfly, then Shutterfly would

20   be liable because they allowed me to upload images of child

21   pornography?

22           MS. SOUTHWORTH:  No.  There are other factors

23   that -- that are at play, Your Honor, like the -- the

24   revenue-sharing arrangement and the search engine platform --

25   the search engine algorithms to help users to find more child
```

02:24PM — line 5
02:25PM — line 10
02:25PM — line 15
02:25PM — line 20
02:26PM — line 25

**UNITED STATES DISTRICT COURT**

1  pornography content, if that is what is being uploaded.  So

2  it's a -- it's more of a -- a holistic approach, Your Honor,

3  taking all those factors together.

4           It's not just one factor.  It's the -- the labels,

02:26PM  5  the, um -- the titles, the tags.  You know, ultimately, it's

6  the aim of this -- this website to promote and encourage CSAM.

7           THE COURT:  Okay.

8           MS. SOUTHWORTH:  So, Your Honor, these are not

9  neutral tools.

02:26PM  10          THE COURT:  Anything else?

11          MS. SOUTHWORTH:  Yes, Your Honor.

12          So in terms of the extraterritorial argument, I want

13  to direct the Court's attention to *Ratha v. Phatthana Seafood*

14  *Company*.  *Ratha v. Phatthana Seafood Company* came out of the

02:27PM  15  Ninth Circuit in 2022.  And this is a case in which the

16  Ninth Circuit, um, permitted a private cause of action for

17  extraterritorial violations of substantive provisions of 1596

18  for a 1595 claim.

19          So in -- in terms of extraterritorial jurisdiction

02:27PM  20  is -- should be -- is permissible to find here, it's per that

21  case out of -- out of the Ninth Circuit.

22          U.S., *Morrison* sets up -- *Morrison v. National* sets

23  up the standard, this kind of two-step analysis.  But the

24  plaintiff would argue that it's -- the first step is actually

02:28PM  25  not clear.  It's -- it's not definitive statute on -- in terms

of -- 1595 is not -- or excuse me.  1596 does not clearly

indicate if -- if it should apply extraterritorial -- or the

beneficiary claim should apply extraterritorially.

So when that situation -- where there's ambiguity,

we go to the second step with *Morrison*, Your Honor.  We look at

the domestic applications of the statute.  We have to look --

THE COURT:  It's the second step, whether the

offender is in the United States?

MS. SOUTHWORTH:  No.  What -- the statute's focus,

Your Honor.  The statute's focus, Your Honor.  The presence of

the defendant is not -- is -- is not -- is not the focus.

Um, and that hasn't been definitively resolved by

the Ninth Circuit.  The -- the Courts read it as requiring the

defendant be "found in," quote/unquote, but there is ambiguity

in terms of that first step, Your Honor, in that the statute

does not have a clear or affirmative indication if it should

apply extraterritorially.

Defendants argue that it doesn't apply because 1595

is not mentioned.  Well, just because it's not mentioned is not

a definitive indication if it should apply.  And so, therefore,

we look at the second step of *Morrison*, and we have to

determine if the case involves a domestic application.

So we look at the statute's focus.  In this case,

we're looking at 1595.  And the purpose of 1595 is to protect

and assist sex trafficking victims, to prevent and deter future

1    sex trafficking and to prosecute and punish sex traffickers,

2    what is the TVPRA's focus.

3              And those -- that focus, then, we -- we take into

4    account that, here, the -- the conduct relevant to this claim

02:30PM    5    occurred in the U.S., since plaintiff was trafficked and abused

6    here in the U.S., that all of the acts and conduct relating to

7    the plaintiff underlying the trafficking occurred here in the

8    U.S.  And that without an underlying sex trafficking -- without

9    the underlying sex trafficking injury to the plaintiff in the

02:30PM    10    U.S., there would be no TVPRA claim against the defendants.

11              So we -- the plaintiff argues, then, that per

12    *Ratha v. Phatthana Seafood Company*, 1595 does permit a private

13    cause of action for an extraterritorial violation of a

14    substantive provision listed in 1596.

02:30PM    15              But, again, Your Honor, if there is -- if there is

16    hesitation on this point, we would ask that the plaintiff have

17    the ability to amend the Complaint in order to correct that

18    deficiency following jurisdictional discovery.

19              And we would ask, Your Honor, that it --

02:31PM    20    alternatively, that -- that the Court would deny the motion to

21    dismiss without prejudice with leave to renew after the

22    completion of discovery, as an alternative.  Um, and -- and, in

23    fact, a case right out of this court, *Laser Spallation Techs,*

24    *LLC, v. The Boeing Company*, the -- the Court held that way

02:31PM    25    and -- and denied the motion to dismiss without prejudice with

```
 1   leave to renew upon completion of that jurisdictional

 2   discovery.

 3            So we would ask that in the alternative.  But,

 4   ultimately, Your Honor, we do ask that -- that this motion to

 5   dismiss would be -- would be denied.

 6            THE COURT:  Okay.

 7            MS. SOUTHWORTH:  And any alternative that the Court

 8   would give the plaintiff leave to amend the Complaint as is --

 9   per the -- you know, Rule 15 when justice so requires and which

10   in this case, Your Honor, it does, particularly in light of the

11   complexities in this case, the number of claims alleged, and

12   just the -- and the complexity in terms of the number of

13   defendants and of their interrelatedness.

14            THE COURT:  All right.  Thank you, counsel.

15            MS. SOUTHWORTH:  Thank you, Your Honor.

16            MR. WILLIAMS:  If I may briefly, Your Honor?

17            THE COURT:  Briefly.

18            MR. WILLIAMS:  First, I want to make clear, this is

19   not a direct liability case.  Their cause of action for

20   trafficking makes clear it is a beneficiary claim.  There are

21   no allegations that anyone from WGCZ or NKL engaged in actual

22   trafficking.  So that argument is not supported by the

23   allegations in the Complaint.

24            With regard to the -- I want to clarify some factual

25   issues that the Court asked about on Section 230.
```

02:31PM   5

02:32PM  10

02:32PM  15

02:32PM  20

02:33PM  25

**UNITED STATES DISTRICT COURT**

1          So the tag, just like the title, is something when a

2    user uploads it to the website, they have a title to their

3    video.  And they can tag that video for people who want to look

4    for certain types of conduct.  That is done by the user.

02:33PM  5          The thumbnail is, you know -- for example,

6    Your Honor, if you go to YouTube and you see a stillshot of all

7    the videos that you could click on, that's essentially a

8    thumbnail of the underlying videos.  So it's -- it's

9    essentially a screenshot or a preview of -- of something in

02:33PM 10    that video.

11          That -- that thumbnail is created by the website.

12    However, as the Ninth Circuit explained in the *Roommates* case,

13    editing, particularly editing for length or trimming, which is

14    what that is doing, is a typical function of a publisher and is

02:34PM 15    clearly covered by Section 230.

16          So the creation of a thumbnail based upon content

17    uploaded by a user is not creating new child pornography, it is

18    not somehow encouraging child pornography.  It applies to all

19    content being put up on the site, and it is a function of a

02:34PM 20    publisher's right to edit for length, which the *Roommates* case

21    made clear, would be covered by Section 230.

22          THE COURT:  So particular videos aren't being

23    singled out.  It's just as things are being uploaded, the way

24    the website works, it creates the ability for a user to see

02:34PM 25    what has been uploaded but in smaller versions of it so they

can click on what -- like YouTube.

MR. WILLIAMS:  Correct.  Correct.  It's just -- and it applies to every piece of content on the site.

There is absolutely nothing on the website that singles out CSAM other than its warnings that say do not do it, we don't want it, we will report it to law enforcement, and it's unlawful.

So in that case, plaintiffs' counsel mentioned the *Omegle* case.  If you review that case, I mean, the facts are night and day.  *Omegle* was a website that was known for sexual online contact.  It appealed and targeted children 13 years and older.  That was their range.

It encouraged them specifically to talk to strangers.  That was a button function on there -- I don't know, it's bizarre, Your Honor.  You read that case, and it has nothing to do with the facts here.

Talk to strangers.  It would pair minors with adults for private video chat.  And its website even had a warning that said, be warned, predators are known to be on this site.

So, I mean, the facts there are completely different.

With regard to, again, the -- the suggestion that the aim is child pornography.  There is absolutely no support in the record for that.  And everything shows the contrary.  It is adult pornography.  They don't want child pornography.  And

1    they take steps to prevent against it.

2         With regard to the failure to moderate -- and

3    Your Honor, I think, started to ask a question there.

4         As we've cited in our papers, Congress made clear

02:36PM  5    under 18, U.S.C., 2258(a), there is no duty to affirmatively

6    search.

7         THE COURT:  Right.

8         MR. WILLIAMS:  But the fact that --

9         THE COURT:  Agreed.

02:36PM 10    MR. WILLIAMS:  So, um, the revenue sharing, it

11    applies, again, to all content.  The search suggesting, you

12    know, this idea that -- Your Honor raised the point about

13    uploading something to Shutterfly.  And counsel commented on,

14    well, it's these algorithms that provide searches and try to

02:36PM 15    find similar content.

16         That was the same situation in *Gonzalez v. Google*

17    because YouTube's algorithms look for related content, and the

18    Court said it applies to everything.  Just because it might

19    allow someone who's looking for terrorist content to find more

02:37PM 20    of it is not -- does not change it to a content creator.

21         The allegations in *Doe v. Mindgeek* were much more

22    extensive as laid out in the -- that operative Complaint and in

23    the order.

24         But in any event, I would submit that that ruling is

02:37PM 25    still inconsistent with Ninth Circuit authority.  I think

1    Judge Selna properly addressed it in the *Doe v. Reddit* case,

2    which was ultimately affirmed by the Ninth Circuit on other

3    issues.

4         And then finally, on extraterritoriality, *Ratha* was

02:37PM    5    a human trafficking case, not a sex trafficking case.  The

6    Ninth Circuit assumed, without deciding, that there would be an

7    extraterritorial reach to 1595.  But it didn't have to reach

8    that question because the claim failed for other reasons.

9         And more importantly, there is no ambiguity in the

02:38PM    10    statute.  The statute -- you never get to Step 2 under the

11    *Nabisco* standard because the statute makes clear there is only

12    extraterritorial reach if these two factors are met.

13         And the Supreme Court has made clear that, if

14    Congress has made clear that there's limited extraterritorial

02:38PM    15    reach, that's the end of the inquiry.  If it doesn't meet those

16    limited circumstances, you don't get to Step 2.

17         So, again, we believe that the entire action can be

18    dismissed under Section 230 grounds.

19         And, then, with regard to the individual other

02:38PM    20    defendants, we believe those should be dismissed -- those are

21    all alternative grounds for it.

22         And to the last point, Your Honor, we -- we

23    fundamentally disagree that jurisdictional discovery should be

24    used to try to bolster the factual allegations to support

02:38PM    25    stated claim under 12(b)(6).  And we think that would violate

1    *Iqbal* and *Twombly*.  So we don't believe that request is proper

2    with regard to the 12(b)(6) portion of the argument.

3                THE COURT:  Okay.

4                MR. WILLIAMS:  Thank you, Your Honor.

02:39PM  5                THE COURT:  Thank you.

6                Thank you.  It was very helpful.

7                In the event that the Court needs additional

8    information, then it will reach out and request for further

9    briefing.  But assuming that that does not happen, the matter

02:39PM  10   will be taken under submission.  And I hope to issue an order

11   soon.

12                MR. WILLIAMS:  Thank you, Your Honor.

13                THE COURT:  Not that soon but soon.

14                THE COURTROOM DEPUTY:  All rise.

02:39PM  15                THE COURT:  Thank you.  This court is adjourned.

16                (Proceedings concluded at 2:39 p.m.)

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3   COUNTY OF LOS ANGELES    )
                             )
4   STATE OF CALIFORNIA      )

5

6          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10  IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11  REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12  THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17          DATED THIS 8TH DAY OF JUNE, 2024.

18

19

20          /S/ MYRA L. PONCE
    _____
21      MYRA L. PONCE, CSR NO. 11544, CRR, RDR
              FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**