1  **KAZEROUNI LAW GROUP, APC**
   Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   Mona Amini, Esq. (SBN: 296829)
3  mona@kazlg.com
   245 Fischer Avenue, Unit D1
4  Costa Mesa, California 92626
   Telephone: (800) 400-6808
5  Facsimile: (800) 520-5523

6  **LEVIN PAPANTONIO**
   Kimberly Lambert Adams
7  kadams@levinlaw.com
   316 S. Baylen Street, Suite 600
8  Pensacola, FL 32502
   Telephone: (850) 435-7056
9
   *Attorneys for Plaintiff,*
10 *JANE DOE*

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  JANE DOE, on behalf of herself and all      Case No.:  2:21-cv-02428-SPG-SK
    others similarly situated,
15                                               **CLASS ACTION**

16                        Plaintiff,             **PLAINTIFF'S RESPONSE IN
                                                 OPPOSITION TO DEFENDANTS'**
17          v.                                   **MOTION TO DISMISS FOR
                                                 FAILURE TO STATE A CLAIM**
18  WEBGROUP CZECH REPUBLIC, A.S.,               **PURSUANT TO FED. R. CIV. P.**
    et al.,                                      **12(b)(6)**
19
                                                 Judge: Hon. Sherilyn Peace Garnett
20                        Defendants.            Hearing Date: October 16, 2024
                                                 Hearing Time: 1:30 p.m.
21

22

23

24

25

26

27

28

---

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

STANDARDS OF REVIEW .......................................................................................... 2

      A.  Motion to Dismiss for Failure to State a Claim .............................................. 2

      B.  Section 230 Immunity ...................................................................................... 2

ARGUMENT ................................................................................................................... 3

I.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING
      THAT THEY ARE ENTITLED TO § 230 IMMUNITY ................................... 3

    A.  WGCZ and NKL Provide Interactive Computer Services .......................... 4

    B.  Plaintiff Seeks to Hold WGCZ and NKL Liable for Their Own
        Bad Acts, Not as Publishers or Speakers ................................................... 4

        1.  Plaintiff's CSAM Claims Do Not Treat Defendants as
            "Publishers" of Third-Party Content ................................................ 4

        2.  Plaintiff's Sex Trafficking Claim Does Not Treat Defendants
            as "Publishers" of Third-Party Content .......................................... 7

    C.  WGCZ and NKL Materially Contribute to the Illegality of the
        Content on Their Websites ........................................................................ 10

    D.  The FOSTA Exception Nonetheless Would Apply to Plaintiff's
        Sex Trafficking Claim ............................................................................... 13

    E.  Plaintiff Has Plausibly Alleged that WGCZ and NKL Participated
        in a Sex-Trafficking Venture ..................................................................... 16

II.   PLAINTIFF'S TVPRA CLAIM IS ACTIONABLE REGARDLESS
     OF DEFENDANTS' PHYSICAL LOCATION ABROAD ............................. 18

III.  PLAINTIFF SUFFICIENTLY ALLEGED DEFENDANTS'
     KNOWING POSSESSION AND RECEIPT OF CSAM ................................. 22

IV.  PLAINTIFF SUFFICIENTLY ALLEGED DEFENDANTS
     VIOLATED CAL. CIV. CODE § 1708.85 ....................................................... 24

CONCLUSION ............................................................................................................. 25

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

**Cases**

3  *A.M. v. Omegle.com LLC*, 2023 WL 1470269 (D. Or. Feb. 22, 2023) ........... 14, 15, 16

4  *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674 (S.D. Tex. 2009).................. 2, 21

5  *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017).................... 21

6  *Anderson v. TikTok, Inc.*, --- F.4th ----, 2024 WL 3948248 (3d Cir. Aug. 27, 2024). 11

7  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ........................................... 24

8  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 2

9  *B.M. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ................................................................................................ 16

10

11  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .................................... 3, 7, 8, 9

12  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) ........................... 2, 4, 7

13  *Cline v. Reetz-Laiolo*, 2018 WL 11608044 (N.D. Cal. Nov. 19, 2018)..................... 24

14  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010)................................ 2

15  *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022) .. 11, 18, 22, 23

   *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012)................................................. 24

16  *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) .......................................... 3

17  *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ... 10, 11, 12, 13, 16, 18, 23

18

19  *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442 (9th Cir. 2024) ............. 2, 20, 21

20  *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022)................................. 13, 14, 15

21  *Estate of Bride v. Yolo Tech.*, 2024 WL 3894341 (9th Cir. Aug. 22, 2024)................. 7

22  *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) ........................................ 10

23  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ........................................................................... 10, 13

24

25  *Forrest v. Meta Platforms, Inc.*, --- F. Supp. 3d ----, 2024 WL 3024642 (N.D. Cal. June 17, 2024)................................................................ 3, 4, 9, 12, 13

26  *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023).......................................... 7

27  *Gonzalez v. Google*, 2 F.4th 871 (9th Cir. 2021) .................................................... 9

28  *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022) ................. 4

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971 (N.D. Cal. 2022) ..................................................................................... 4, 5

*Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022) ............................... 10

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016).............................................. 3, 10

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)......................... 19, 21

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009).. 10

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................................ 24

*Nixon in Int. of Moore v. Buck*, 2019 WL 6620504 (C.D. Cal. Sept. 11, 2019) ......... 24

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018)...................................... 18

*Rabin v. Google LLC*, --- F. Supp. 3d ----, 2024 WL 1269313 (N.D. Cal. Mar. 26, 2024)......................................................................................................................... 3

*Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ....................... 20, 21

*Ratha v. Phatthana Seafood Co., Ltd.*, 2016 WL 11020222 (C.D. Cal. Nov. 9, 2016) ................................................................................................................................... 20

*Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8292922 (C.D. Cal. Dec. 21, 2017) ................................................................................................................................... 20

*Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2012) .................................................... 3

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) ....................... 19, 22

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019)............................................................ 21

*Russello v. United States*, 464 U.S. 16 (1983) ......................................................... 20

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ........... 2

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................. 2

*United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016)........................................ 18

*United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012).......................................... 23

*United States v. Gartenlaub*, 2016 WL 3607154 (C.D. Cal. June 30, 2016).............. 22

*United States v. Haymond*, 672 F.3d 948 (10th Cir. 2012)....................................... 22

*United States v. Marchand*, 308 F. Supp. 2d 498 (D.N.J. 2004) .............................. 22

*United States v. Pabon-Cruz*, 255 F. Supp. 2d 200 (S.D.N.Y. 2003) ....................... 22

*United States v. Romm*, 455 F.3d 990 (9th Cir. 2006) ............................................... 6

*United States v. Ruiz-Castelo*, 835 F. App'x 187 (9th Cir. 2020)........................ 22, 23

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

*United States v. Skinner*, 536 F. Supp. 3d 23 (E.D. Va. 2021) ............................... 6, 22

*United States v. Wolfenbarger*, 2020 WL 2614958 (N.D. Cal. May 22, 2020).......... 19

*WesternGeco v. ION Geophysical Corp.*, 585 U.S. 407 (2018)..................... 19, 21, 22

**Statutes**

18 U.S.C. § 1591(e)(4) ..................................................................................................... 8

18 U.S.C. § 1595 ............................................................................................................... 7

18 U.S.C. § 1596 ....................................................................................................... 19, 21

18 U.S.C. § 2252 ............................................................................................................... 5

18 U.S.C. § 2252A .................................................................................................... 5, 13

18 U.S.C. § 2258A(a) & (h). ........................................................................................... 6

18 U.S.C. § 2258B ............................................................................................................ 6

18 U.S.C. § 2260 ....................................................................................................... 5, 23

22 U.S.C. § 7101 ............................................................................................................ 21

47 U.S.C. § 230 ......................................................................................................... 1, 13

Cal. Civ. Code § 1708.85 ............................................................................................... 24

Online Pharmacy Consumer Protection Act of 1008, Pub. L. 110-425, Stat. 4820 (2008)............................................................................................................................ 19

Pub. L. 110–401, title V, § 501(a), Oct. 13, 2008, 122 Stat. 4243 & 4248.................. 6

Pub. L. 110–457, 122 Stat. 5044, § 201 (2008) ........................................................... 20

Radiation Exposure Compensation Act, Pub. L. 101-426, 104 Stat. 920 (1990) ....... 19

USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272 (2001) ....................................... 19

**Other Authorities**

146 Cong. Rec. E697 (daily ed. May 10, 2000)........................................................... 21

146 Cong. Rec. S7781 (daily ed. Jul. 27, 2000).......................................................... 21

151 Cong. Rec. S14299 (daily ed. Dec. 21, 2005)...................................................... 22

M. Kappelhoff, *Federal Prosecutions of Human Trafficking Cases: Striking a Blow Against Modern Day Slavery,* 6 U. St. Thomas L.J. 9 (Fall 2008).......................... 22

**Treatises**

Restatement (Second) of Torts § 7................................................................................. 24

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

**INTRODUCTION**

Defendants[1] are the owners and operators of XVideos and XNXX, two of the largest pornography websites in the world. Child pornography or child sexual abuse material ("CSAM") has been rampant on these websites for years, including CSAM videos of Plaintiff Jane Doe's sex trafficking that occurred when she was only 14 years old. On behalf of herself and likely hundreds or thousands of other victims, Plaintiff brought this action to hold Defendants accountable for their profiting off the CSAM that they receive, possess, and/or disseminate on their websites.

Now, Defendants move to dismiss Plaintiff's action ("Motion"). Even though Plaintiff's claims would not hold Defendants liable as "publishers" of the illegal CSAM that they brazenly promote, create, materially contribute to, reward, and profit from, Defendants maintain that they are immune from Plaintiff's claims under the Communications Decency Act, 47 U.S.C. § 230 ("§ 230"). Defendants also argue that Plaintiff has not sufficiently plead her claims. Defendants' arguments are meritless, and Plaintiff's Second Amended Complaint ("SAC") states plausible claims against Defendants. Accordingly, Defendants' Motion should be denied.

**BACKGROUND**

On September 13, 2021, Plaintiff filed the FAC. ECF No. 129. On October 25, 2021, Defendants moved (1) to dismiss for lack of personal jurisdiction (ECF No. 134); (2) to dismiss for failure to state a claim, brought on behalf of WebGroup Czech Republic, a.s. ("WGCZ") and NKL Associates s.r.o. ("NKL") (ECF No. 135); and (3) to dismiss for failure to state a claim, brought on behalf of the other remaining Defendants. ECF No. 136. On January 13, 2022, the Court entered an Amended Opinion and Order granting Defendants' motion to dismiss for lack of personal jurisdiction and denying Defendants' 12(b)(6) motions as moot. ECF No. 162. On

---

[1] "Defendants" in this Opposition collectively refers to the remaining Defendants in this action—WebGroup Czech Republic, a.s.; NKL Associates, s.r.o.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; Traffic F, s.r.o.; GTFlix TV, s.r.o.; FTCP, s.r.o.; HC Media, s.r.o.; and FBP Media s.r.o.

January 27, 2022, Plaintiff filed a motion for reconsideration (ECF No. 163), which the Court granted in part and amended the dismissal as a dismissal without prejudice (ECF No. 168), and Plaintiff appealed to the Ninth Circuit. On January 2, 2024, as amended on February 14, 2024, the Ninth Circuit reversed the dismissal of WGCZ and NKL for lack of personal jurisdiction, vacated the dismissal of the other remaining Defendants, and remanded the case to this Court. *Doe v. WebGroup Czech Rep., a.s.*, 93 F.4th 442 (9th Cir. 2024). On July 24, 2024, the Court granted Defendant's 12(b)(6) motion, dismissed the FAC, and granted Plaintiff leave to amend. ECF No. 192. Plaintiff filed her SAC on August 14, 2024 (ECF No. 194) and Defendants' Motion is now before the Court.

## STANDARDS OF REVIEW

### A.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only where there is no cognizable legal theory supporting the claim or where the SAC lacks sufficient factual allegations to state a plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The Court must accept as true all well-pleaded material facts alleged, construe them in the light most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Under *Iqbal*, all that is required . . . is that the claims . . . are plausible, not that they show probability of success." *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 684 (S.D. Tex. 2009) (denying motion to dismiss trafficking claims); *see also Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) ("The standard . . . is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'").

### B.    Section 230 Immunity

"Section 230(c)(1) immunity is an affirmative defense", and Defendants bear the burden of establishing it applies here. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 n.1 (9th Cir. 2024). Because this affirmative defense is being invoked at the

pleading stage, Defendants must establish, "beyond dispute[,] that Section 230 provides an airtight affirmative defense to all of [Plaintiff's] claims." *Forrest v. Meta Platforms, Inc.*, --- F. Supp. 3d ----, 2024 WL 3024642, at \*3 (N.D. Cal. June 17, 2024) (emphasis added). To survive Defendants' Motion to Dismiss, Plaintiff only "'need[s] to plead facts demonstrating a potential factual dispute that could affect whether the defense applies.'" *Id.* at \*2 (quoting *Rabin v. Google LLC*, --- F. Supp. 3d ----, 2024 WL 1269313, at \*2 (N.D. Cal. Mar. 26, 2024)). "Plaintiffs do not need to plead facts that would prove (or even plausibly suggest) that [Defendants'] affirmative defense does not apply; *[Plaintiffs] simply need to plead facts demonstrating a potential factual dispute that could affect whether the defense applies.*" *Rabin*, 2024 WL 1269313, at \*2 (emphasis added). This makes sense, since "complaints need not anticipate defenses[.]" *Id.* (quoting *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012)).

## ARGUMENT

## I.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING THAT THEY ARE ENTITLED TO § 230 IMMUNITY

The CDA does not immunize defendants from all liability for their actions just because they are internet service providers ("ISPs") and, in particular, the "CDA does not [even] declare 'a general immunity from liability deriving from third-party content.'" *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)). "Section 230(c)(1) of the CDA only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (internal quotation omitted). Because Defendants have "invoke[d] this affirmative defense at the pleading stage, [they] must show that [Plaintiff's] allegations establish beyond dispute: (1) that [Defendants] 'provider[s] . . . of an interactive computer service'; (2) that the challenged content is 'information provided by another information content provider'; and (3) that [Plaintiff's] claims

3

'treat' [Defendants] as the 'publisher[s] or speaker[s]' of that information." *Forrest*, 2024 WL 3024642, at *3-4 (quoting *Calise*, 103 F.4th at 740).

This Court should deny Defendants' Motion because they have "not established beyond dispute that Section 230 provides an airtight affirmative defense to all of [Plaintiff's] claims." *Id.* at *3. Accepting the allegations in the SAC as true and construing them in the light most favorable to Plaintiff, the allegations in the SAC unquestionably present a potential factual dispute as to whether Section 230 applies.

## A. WGCZ and NKL[2] Provide Interactive Computer Services

Plaintiff does not dispute this element of § 230.

## B. Plaintiff Seeks to Hold WGCZ and NKL Liable for Their Own Bad Acts, Not as Publishers or Speakers

"[F]or a claim to treat someone as a publisher under § 230(c)(1), the claim must seek to impose liability based on the defendant's dissemination of information to someone who is not the subject of the information." *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 121 (4th Cir. 2022). Put another way, if a claim is premised on a defendant's conduct other than disseminating information to a third party, the defendant is not being treated as a "publisher" and § 230 immunity cannot apply. *Id.* Therefore, "[t]o determine whether Section 230 immunity applies, this Court must decide whether Plaintiffs' theory of liability would treat the [defendants] as a publisher or speaker of third-party content." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 978 (N.D. Cal. 2022). And "section 230 does not apply to a platform's *own* bad acts." *Id.* at 992 (emphasis in original).

### 1. Plaintiff's CSAM Claims Do Not Treat Defendants as "Publishers" of Third-Party Content

Here, Plaintiff seeks to hold WGCZ and NKL liable for their *own* bad acts independent of disseminating information to third parties. *See id.* at 994 (§ 230

---

[2]    Defendants' Motion discusses § 230 immunity for just WGCZ and NKL, Mot. at 7-13, so Plaintiff does the same here—though the arguments apply to all Defendants.

immunity did not apply where the plaintiffs "s[ought] to hold the Platforms responsible for their own illegal conduct" of "processing . . . *unlawful* transactions for *unlawful* gambling."). Plaintiff has asserted CSAM claims in Count II ("Receipt and Distribution of Child Pornography, 18 U.S.C. §§ 2252 and 2252A") and Count III ("Receipt and Distribution of Child Pornography, 18 U.S.C. § 2260"),[3] under which it is illegal to "receive," "possess," OR "distribute" CSAM. 18 U.S.C. §§ 2252(a)(2)-(4); 2252A(a)(2), (5); 2260(b). To the extent Plaintiff's CSAM claims seek to hold WGCZ and NKL liable for "receipt" or "possession" of illegal images of minors, they clearly are not the acts of "publishers" or "speakers" of information, and those claims thus seek to hold WGCZ and NKL accountable for their own bad acts, just like any other person who knowingly "receives" or "possesses" CSAM regardless of what business they are in. *See In re Apple*, 625 F. Supp. 3d at 992-94.

Contrary to the implications of Defendants' argument that obtaining content is simply part of being a "publisher," *see* Mot. at 20-21, immunizing Defendants from liability for receipt and possession of CSAM on such grounds would mean that ISPs are immunized from all third-party content related claims—regardless of what the ISPs actually do (or even intend to do) with that content—and improperly broaden the limited protections of the CDA. However, claims for receipt and possession of CSAM are not "treating" Defendants as "'publisher[s] or speaker[s]' of that information" as required for CDA immunity to apply, *see Calise*, 103 F.4th at 740—they are just treating Defendants the same as any other person who knowingly receives and possesses CSAM. Before the internet, a non-online pornographer, like a paper magazine company, that knowingly obtained CSAM from a third party and then possessed it clearly could (and still can) be held liable under §§ 2252, 2252A, and 2260 regardless of whether the pornographer later used that content in its magazine. Surely,

---

[3]    *See* FAC ¶¶ 223, 230 (Defendants "knowingly received, possessed, advertised, and distributed child pornography depicting Class members including Plaintiff"); *see also id.* ¶¶ 8, 13, 50, 61-62, 147-148, 153, 194, 199-202.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

that Defendants operate online cannot immunize them from liability for acts—that do not constitute publication of content online—for which they could be held liable if they operated their pornography business using a different media like a paper magazine. Also, there is no magic to the fact that Defendants obtained this illegal content via the internet. Persons who obtain CSAM online commonly are held liable for receipt and possession even though they obtained it via the internet and not through the mail or another tangible means, *see, e.g.*, *United States v. Skinner*, 536 F. Supp. 3d 23, 37-41 (E.D. Va. 2021); *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006), and there is no meaningful reason why internet pornographers like Defendants cannot likewise be held liable for knowingly receiving and possessing CSAM just because they want to disseminate other, legal content on their websites.

Additionally, Congress's passage of the PROTECT Our Children Act of 2008[4]—12 years *after* the enactment of the CDA—shows that Congress did *not* intend § 230 to immunize internet companies like Defendants from claims relating to the receipt and possession of CSAM. 18 U.S.C. § 2258A requires *ISPs* who have knowledge of violations of federal CSAM laws (a) to *report* apparent CSAM to the National Center for Missing and Exploited Children (NCMEC) and (b) to *preserve* such content using specific security standards. 18 U.S.C. § 2258A(a) & (h). While § 2258A imposes strict sanctions for the failure to do so, 18 U.S.C. § 2258B(a) provides *ISPs* that do report such content to NCMEC with *limited* immunity from any "civil claim or criminal charge" relating to "the reporting or preservation responsibilities of such provider" under certain proscribed circumstances. 18 U.S.C. § 2258B(a). If ISPs were immune under § 230 from claims for receipt and possession of CSAM because obtaining and possessing content is part of being a "publisher" as Defendants argue here, the § 2258A prohibition and sanctions against ISPs for failing to report CSAM to NCMEC would be utterly meaningless and ineffective, and the § 2258B limited

---

[4]    Pub. L. 110–401, title V, § 501(a), Oct. 13, 2008, 122 Stat. 4243 & 4248 (enacting 18 U.S.C. §§ 2258A and 2258B).

immunization for certain claims related to that type of reporting and preservation of CSAM would be superfluous and unnecessary. Accordingly, including receiving and possessing content as part of "publishing" under all circumstances regardless of the underlying claim being asserted is clearly inconsistent with Congress's intent and would improperly broaden the limited scope of § 230.

## 2. Plaintiff's Sex Trafficking Claim Does Not Treat Defendants as "Publishers" of Third-Party Content

In *Calise*, the Ninth Circuit recently tried to "clarify" its precedent, which "has yielded mixed results as to the application of [§ 230] immunity." 103 F.4th at 736. Under *Calise*, courts "look to the legal duty" behind a claim in a two-part inquiry. *Id*. at 742. *First*, "what is the right from which the duty springs? If it springs from something separate from the defendant's status as a publisher, such as from an agreement, or from obligations the defendant has in a different capacity, then [Section] 230(c)(1) does not apply." *Id*. at 742. *Second*, courts ask "what is this duty requiring the defendant to do? If it obliges the defendant to 'monitor third-party content'—or else face liability—then that … is barred by § 230(c)(1)." *Id*. This analysis applies here. *See also Est. of Bride v. Yolo Techs., Inc.*, 2024 WL 3894341 (9th Cir. Aug. 22, 2024).

Regarding Count I (18 U.S.C. §§ 1591, 1595), this Court must first identify where the duty originates or "springs" from. *Calise,* 103 F.4th at 742. The duty here is that a defendant must not knowingly benefit from participation in a venture which the defendant knew has engaged in a violation of the TVPRA. *See* § 1595; *see G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023) ("plaintiffs allege that Salesforce had a duty not to benefit knowingly from participating in Backpage's venture while knowing or having reason to know that the venture was engaged in sex trafficking. That duty does not depend in any way on Salesforce's supposed status or conduct as a 'publisher or speaker.'") (citing *Barnes*, *supra*).[5]

---

[5] *Barnes* involved nude pictures and suggestive posts that the plaintiff's former boyfriend had posted on Yahoo, but which Yahoo failed to remove despite promising

7

The second inquiry is to identify what the duty requires the defendant to do. The Defendants' duty under the TVPRA does not require them to monitor third-party content; rather, Defendants must not knowingly benefit from participation in a venture. And the standard for "participation in a venture" requires knowingly "assisting, supporting, or facilitating a violation of [§1591(a)(1)]." 18 U.S.C. § 1591(e)(4).

Taking all the allegations in a light most favorable to the Plaintiff, the SAC plausibly alleges that the Defendants' business model encouraged and promoted the posting of CSAM to their platforms (SAC ¶¶ 213-15); that they designed their platform for the purpose of monetizing sexually explicit content and monetized that content through advertising (¶ 216(b,g)); and that the WGCZ Defendants created thumbnails, tags, categories, and keywords that are associated with CSAM on their platforms (¶ 216(i-k). Additionally, the SAC alleges that the search terms designed by Defendants for CSAM are per se illegal and cannot be neutral. They are designed for an illegal purpose and used for an illegal conduct. *Id.* ¶ 160. In sum, Plaintiffs' TVPRA claims do not allege that Defendants have a duty to monitor their websites—it alleges that they have a duty to not design their websites for the purpose of hosting CSAM.

Defendants also knowingly share revenue with traffickers. *Id.* ¶ 214-15; 216(c-d). Their revenue-sharing model—which encourages and incentivizes the proliferation of CSAM on their websites—involves "bad acts" independent of WGCZ and NKL's roles as "publishers." Specifically, § 230 "does not immunize [an internet service provider] from . . . claims premised on revenue-sharing." *Gonzalez v. Google,* 2 F.4th 871, 898 (9th Cir. 2021), *vacated and remanded on other grounds*, 598 U.S. 617 (2023)

---

the plaintiff that it would. 570 F.3d at 1098-99. While concluding Yahoo was immune from plaintiff's "negligent undertaking" claim under § 230 because editing and removing content from a website was "an action that is quintessentially that of a publisher," the Ninth Circuit held that Yahoo was *not* immune from plaintiff's promissory estoppel claim because that claim "does not seek to hold Yahoo liable as a publisher or speaker of third-party content, *but rather as the counter-party to a contract, as a promisor who has breached*. . . . Contract liability [] would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something" which it failed to do. *Id.* at 1103, 1107 (emphasis added).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

KAZEROUNI
LAW GROUP, APC

(per curiam).[6] In *Gonzalez*, Google had approved a terrorist group for its advertising revenue sharing program, and the Ninth Circuit found that § 230 did not bar claims related to the profit-sharing arrangement because they were not premised on publisher liability. *Id.* at 898-99. Likewise, allegations that an internet company knowingly receives CSAM in exchange for sharing revenue with traffickers, thereby facilitating sex trafficking, establish actionable claims for sex trafficking and for receipt and possession of CSAM based on the internet company's *own* actions and relationship with sex traffickers—which are totally unrelated to whether the internet company disseminates information to third parties.

"[L]iability here would come not from [WGCZ and NKL's] publishing conduct, but from" their illegal receipt and possession of CSAM and benefiting from sex trafficking. *Barnes*, 570 F.3d at 1107. The SAC alleges Defendants share advertising revenue with uploaders, including Plaintiff's traffickers, and take a cut of Channel partner earnings; create thumbnail images of CSAM to "generate additional revenue"; are in a revenue sharing relationship with the content partner and channel that uploaded Plaintiff's CSAM; and financially benefitted from Plaintiff's CSAM "as each video depicting her abuse accrued thousands of views, with one video accruing over 160,000 views." SAC ¶¶ 50, 113-16, 121, 124-26, 137, 196-97, 201-02.

Construing the SAC allegations in the light most favorable to Plaintiff, the SAC alleges that Defendants receive and possess CSAM, engage in revenue-sharing relationships with sex traffickers and child pornographers, and profit from CSAM— all of which presents "a potential factual dispute" as to whether § 230 applies and shows that Defendants "ha[ve] not demonstrated that there can be no dispute" that § 230 "provides an impenetrable defense." *Forrest*, 2024 WL 3024642, at *2, 4-5.

---

[6]    In *Gonzalez*, the Supreme Court did not address whether revenue-sharing claims are immune under § 230. 598 U.S. at 622.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

### C.    WGCZ and NKL Materially Contribute to the Illegality of the Content on Their Websites

In analyzing the third element for § 230 immunity regarding providing content of another provider, a website that "mak[es] a material contribution to the creation or development of content" on its website loses § 230(c)(1) immunity. *Kimzey*, 836 F.3d at 1269. An interactive computer service provider is considered an information content provider or developer that is *not* entitled to § 230 immunity "if it contributes materially to the alleged illegality of the conduct." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008). "A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content." *Id.* at 1162. "But as to content that it creates itself, or is 'responsible, in whole or in part" for creating or developing, the website is also a content provider.'" *Id.*

In *Roommates*, the Ninth Circuit held that the defendant-website was a content provider "and thus section 230 of the CDA d[id] not apply" where it posted a questionnaire with discriminatory questions that users were required to answer, and then designed its search function to use the answers to steer users to search results based on discriminatory criteria. *Id.* at 1164-67.[7] It follows directly from *Roommates* that a website is not immune under § 230 where it has solicited or encouraged users to provide the unlawful content at issue. *See id.*

In *Doe v. Mindgeek USA Inc.*, the court found that § 230 did not shield the owners/operators of Pornhub—a competitor website to XVideos and XNXX—from

---

[7] *See also Kimzey*, 836 F.3d at 1269 n.4; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257-58 (4th Cir. 2009) (discussing *Roommates* and concluding that a website that "encourage[s] illegal content" from users is not immune under § 230); *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197-1201 (10th Cir. 2009) (website that intentionally made illegal purchases of confidential consumer information was not immune under § 230); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 898 (N.D. Cal. 2022) (holding defendant was content provider and not immune under § 230 where plaintiff alleged that defendant took third-party content, repurposed it, and presented the repurposed content on its website—which made "it at least 'in part' responsible for the 'creation and development' of th[e] material").

the plaintiff's sex trafficking and CSAM claims. 558 F. Supp. 3d 828, 842 (C.D. Cal. 2021). Specifically, the court found that Pornhub's owners/operators were content creators that materially contributed to the creation of CSAM on its platforms where the complaint alleged that they:

> (1) established guidelines for categories, tags, and titles that Defendants direct traffickers to create and promote child pornography to target the "right" fans; (2) know that child pornography is repeatedly posted to its platforms; (3) share the proceeds of such content with traffickers Defendants have relationships with; (4) use a VPN and a Tor site to anonymize web traffic, making it difficult for law enforcement to locate child pornography producers; and (5) developed a private messaging system so that traffickers can exchange child pornography on their websites and evade law enforcement.

*Id.* (citations omitted). "These facts, coupled with the other allegations in Plaintiff's FAC that Defendants curate video playlists with titles such as 'less than 18,' 'the best collection of young boys,' and 'under-age,' clearly indicate Defendants' role in the development of [CSAM] on their platforms." *Id.* (citation omitted); *see also Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1171 (N.D. Ala. 2022) (no § 230 immunity when defendants "played a vital role in the creation and development of CSAM, such as by using keywords and tags to encourage users to find CSAM").

Likewise, ISPs engage in their own speech—and, therefore, are not immune under § 230—when they provide third-party content to users through search and recommendation functions created by the ISPs themselves. *Anderson v. TikTok, Inc*., --- F.4th ----, 2024 WL 3948248, at *3 (3d Cir. Aug. 27, 2024) (holding "§ 230 does not bar [Plaintiff's] claims" against TikTok for death of 10-year-old as a result of third-party's "Blackout Challenge" video "when they curate compilations of others' content via their [own] expressive algorithms" because "the information that forms the basis of Anderson's lawsuit—*i.e.*, TikTok's recommendations via its FYP algorithm—is TikTok's own expressive activity").

Construing the SAC allegations in the light most favorable to Plaintiff, the SAC sufficiently alleges that WGCZ and NKL materially contribute to the illegality of the content on their websites such that the allegations "present a potential factual dispute

11

regarding whether" WGCZ and NKL are content providers that are not entitled to § 230 immunity. *Forrest*, 2024 WL 3024642, at *5. As in *Mindgeek*, the SAC alleges that Defendants (1) create guidelines which permit, promote, and encourage sex trafficking and CSAM; (2) know CSAM is regularly posted on their platform; (3) share the proceeds of such content with sex traffickers that they have a relationship with, including Channel partners which distributed CSAM of Plaintiff; (4) use VPNs to anonymize web traffic, making it difficult for law enforcement to locate CSAM on its websites; (5) developed an anonymized communication system that allows users to share images and videos while hiding behind a VPN to facilitate the exchange of CSAM and evade law enforcement; (6) create titles, tags, keywords, search terms, and categories indicative of CSAM to make it easier for users seeking CSAM to find it through the websites' search and recommendation functions, and to maximize views and profits; (7) create ads based on data from searches and videos indicating CSAM and highlight ads aimed at users seeking CSAM; and, most egregiously, (8) create thumbnails from all videos, including the CSAM depicting Plaintiff—*which constitutes new and distinct CSAM that Defendants themselves created and possess.*[8] SAC ¶¶ 12, 116, 121, 124-25, 129-44, 147-49, 155-56, 159-63, 167, 196-97, 199-201, 216j, 216o, 224. Defendants' creation of thumbnails from uploaded CSAM, standing alone, makes them "at least 'in part' responsible for the 'creation and development' of" CSAM. *Kellman*, 599 F. Supp. 3d at 898.

Viewing these allegations in the light most favorable to Plaintiff, they "clearly indicate Defendants' role in the development of child pornography on their platforms" and "go[] far beyond the neutral tools the Ninth Circuit has protected within the ambit

---

[8]   *See MG Freesites*, 676 F. Supp. 3d at 1162 (the "creat[ion of] thumbnails of CSAM videos, including of the videos of Plaintiffs, [] amounts to new creation and possession of child pornography" that, among other things, led the court to conclude that the "Defendants do even more than merely encourage the posting of CSAM by providing a means for users to publish what they created but rather materially contribute to it by designing their platforms for an illicit purpose.").

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

of Section 230 immunity." *Mindgeek*, 558 F. Supp. 3d at 842.[9] Defendants' argument

that they "merely provide a neutral platform for third parties to post whatever they like

simply cannot be squared with allegations that aspects of Defendants' platforms

facilitate both the dissemination of child pornography (which is unlawful in and of

itself, *see* 18 U.S.C. § 2252A) *and* the development of child pornography." *Id*. This is

especially true because the allegations in the SAC—most notably the ***creation*** of titles,

tags, keywords, search terms, and categories indicative of CSAM, and the ***creation*** of

thumbnails that constitute new CSAM—"present a potential factual dispute" as to

whether Defendants materially contribute to the illegality of the CSAM on its websites.

*Forrest*, 2024 WL 3024642, at \*5; *see also Roommates*, 521 F.3d at 1171..

Accordingly, Defendants have failed to meet their burden of establishing, beyond

dispute, that § 230 provides an impenetrable defense. *See Forrest*, 2024 WL 3024642,

at \*4-5.

### D.    The FOSTA Exception Nonetheless Would Apply to Plaintiff's Sex Trafficking Claim

FOSTA provides an exception to § 230 immunity for civil claims under 18

U.S.C. § 1595 "if the conduct underlying the claims constitutes a violation of [18

U.S.C.] section 1591." 47 U.S.C. § 230(e)(5)(A). Defendants' argument regarding the

claimed inapplicability of FOSTA and the implications of *Does 1-6 v. Reddit, Inc*., 51

F.4th 1137 (9th Cir. 2022), Mot. at 14-15, are wrong.

Assuming *arguendo* that the Court concludes that WGCZ and NKL have § 230

immunity,[10] the FOSTA exception applies to Plaintiff's sex trafficking claims even in

light of *Reddit. Reddit* analyzed a plaintiff's *beneficiary liability claim* under 18 U.S.C.

---

[9] Defendants' argument that they have not materially contributed to the illegality of *Plaintiff's* CSAM, *see* Mot. at 9, should likewise be rejected. *See Mindgeek*, 558 F. Supp. 3d at 842 n.6.

[10] The *Reddit* decision did not address whether the plaintiffs' sex-trafficking claims treated the platform as a publisher or speaker within the meaning of § 230 because the parties had agreed that it did. 51 F.4th at 11.41. Here, that point is in contention. And the correct framework to analyze it is the legal-duty analysis in *Calise*.

§ 1591(a)(2) and held that "for a plaintiff to invoke FOSTA's immunity exception, she must plausibly allege that the website's own conduct violated section 1591." 51 F.4th at 1141-45. As a result, *Reddit* does not control where a plaintiff's factual allegations support a claim for *direct liability* under § 1591(a)(1).[11] Here, there are ample allegations in the SAC regarding Defendants' business model, which include promoting and encouraging CSAM, voluminous CSAM on their websites, failure to moderate and cull out illegal content, profiting from CSAM, and revenue-sharing with uploaders of CSAM[12]—all of which supports Plaintiff's claim for direct liability under § 1591(a)(1). *Reddit* thus does not preclude the application of the FOSTA exception to Plaintiff's sex trafficking claim. *See Omegle*, 2023 WL 1470269, at *4 (FOSTA applied where "the very structure of the platform[] and Omegle's business model" showed plaintiff sufficiently stated § 1591(a)(1) direct liability claim).

Regarding a § 1591(a)(2) beneficiary liability claim, the *Reddit* court noted that "association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." 51 F.4th at 1145. So, companies that

---

[11] *See A.M. v. Omegle.com LLC*, 2023 WL 1470269, at *3-4 (D. Or. Feb. 22, 2023) (discussing *Reddit* and holding that FOSTA exception applied to the plaintiff's sex trafficking claims against a video-chat website for violating § 1591(a)(1) and (a)(2)).

[12] *See, e.g.*, SAC ¶¶ 12, 147-48, 173 (failure to remove CSAM); 112-15 ("verifying" users without age verification); 117-19 (relationships with content partners and production studios); 121-22, 157 ("verification process" without verifying ages of people in videos); 123 (review and approval of all videos); 124-26 (monetization of videos, revenue/profit sharing, and other benefits provided to content providers); 127-28, 158-62 (profiting from commercial sex acts, including CSAM, through advertising containing content created and controlled by Defendants); 129-35 (Defendants' creation of tags, titles, categories, and search suggestions that optimizes views and accessibility to CSAM); 136 (maintaining user statuses and indexes and facilitating monetization of videos); 137-42 (creation of thumbnails which optimizes views and traffic); 143-44 (chat system that allows users and account holders to communicate and share images and videos anonymously); 144, 157 (facilitating the proliferation of CSAM by allowing access through VPNs and allowing users to upload CSAM anonymously); 146 (failure to monitor and to control CSAM and who is posting or appearing in videos on the websites); 149-52 (production of pornography, including CSAM, by companies owned and/or affiliated with Defendants); 153 (failure to report CSAM to NCMEC); 154-56 (analyzing and using data to increase website traffic and to create content including tags, thumbnails, etc. to drive user engagement).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

merely "turn a blind eye to the source of their revenue" cannot be held liable under § 1591(a)(2). *Id.* The court concluded that Reddit did not actively participate in trafficking as the plaintiffs did not "allege a connection between the [CSAM] posted on Reddit and the revenue Reddit generates, other than the fact that Reddit makes money from advertising all popular subreddits." *Id.* at 1145-46. To successfully plead beneficiary liability for sex trafficking, plaintiffs must allege "far more active forms of participation" than merely operating a website where users can post CSAM. *Id.* at 1146.

Unlike in *Reddit*, here the specific subject matter and "primary use" of Defendants' websites is *pornography. See Omegle*, 2023 WL 1470269, at *5 (discussing significance that "primary use" of the defendant's website was sharing "online sexual content" as compared to *Reddit*). Considering the "primary use" here, there simply is no benign reason to provide users with categories like "toddler" on a website designed to host sexually graphic material. SAC ¶¶ 159-60. In *Reddit*, the plaintiffs did not allege "a connection between the [CSAM] posted on Reddit and the revenue Reddit generates, other than the fact that Reddit makes money from advertising on all popular subreddits." 51 F.4th at 1145-46. Here, Plaintiff alleges that Defendants were in a "revenue-sharing relationship" with a "content partner" that had posted her CSAM. SAC ¶ 196. Also, unlike in *Reddit*, Plaintiff has alleged Defendants' knowledge of CSAM on their websites and that aspects of Defendants' business model encourage and capitalize on CSAM—all of which support her § 1591(a)(2) beneficiary liability claim. *See Omegle*, 2023 WL 1470269, at *5 (discussing significant differences between Omegle and Reddit websites, how plaintiff stated viable § 1591(a)(2) beneficiary liability claim, and how FOSTA applied even after *Reddit*).[13]

---

[13]   "Plaintiff has alleged that Omegle did knowingly facilitate sexual encounters between minors and adults, and that it benefited from that venture through receiving advertising revenue. Plaintiff successfully contends that Defendant did more than 'turn a blind eye to the source of their revenue.' Defendant's entire business model, according to Plaintiff, is based on this source of revenue. These allegations meet the 'far more active form of participation[]' required to survive this stage of the proceedings." *Omegle*, 2023 WL 1470269, at *5 (quoting *Reddit*, 51 F.4th at 1145-46).

Finally, in *Reddit*, there were no allegations that the platform recommended illegal content to users. Here, the Defendants' sites search-suggestion features are designed to help users find illegal CSAM. SAC ¶¶ 159-60. Accordingly, Plaintiff's "allegations meet the 'far more active form of participation'" for beneficiary liability under § 1591(a)(2) in *Reddit*, *see Omegle*, 2023 WL 1470269, at *5, and the FOSTA exception applies to Plaintiff's sex trafficking claim.

E.     **Plaintiff Has Plausibly Alleged that WGCZ and NKL Participated in a Sex-Trafficking Venture**

Contrary to Defendants' assertion, *see* Mot. at 17-18, the SAC sufficiently alleges that Defendants knew or should have known Plaintiff was a victim of sex trafficking and that they benefitted from her trafficking. First, Defendants screen and approve videos shared by content partners such as Plaintiff's traffickers. SAC ¶¶ 123, 216(h). They edit and create tags, categories, and search suggestions. *Id.* ¶¶ 6, 129-35, 159-61, 216(i), 216(o). Like in *Mindgeek*, 558 F. Supp. 3d at 838, these tags indicate CSAM, including words like teen and even toddler. SAC ¶¶ 159, 161. The incidents specified in the SAC are not mere general knowledge about trafficking, but specific examples of business associates responsible for sex trafficking, including WGCZ production studio Bang Bros, who have filmed, produced, and distributed CSAM of at least one minor. *Id.* ¶¶ 56(b), 149-52. These put Defendants on alert that this is occurring with partners and not just third-party uploaders. *B.M. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020).

Plaintiff reported her videos and put Defendants on notice, but they did not act until attorneys were involved. SAC ¶¶ 196, 199-200. This scenario is a common problem on the platform and is not unique to Plaintiff. *Id.* ¶¶ 147-48. By ignoring the pleas of Plaintiff and the putative class, WGCZ was in knowing possession of CSAM and allowing its distribution for profit. *Id.* ¶¶ 147-48, 196, 199-200. Moreover, Defendants engaged in numerous activities that make clear they should have known Plaintiff had been trafficked. Defendants store, distribute, disseminate, develop,

16

optimize, advertise, market, sell, create, facilitate, benefit and profit from CSAM on their sites while also providing benefits and profits to sex traffickers, including Plaintiff's trafficker. *Id.* ¶¶ 50, 124-28, 193-94, 196-97, 201-02, 214. Defendants say they require account holders to be at least 18 but there is no process to verify this, and any account holder can upload videos without age verification of any kind. *Id.* ¶¶ 113-19, 121-22, 178, 198, 216(d). XVideos users that have "verified" by uploading a video of themselves[14] then get to participate in a unique chat system and continue to upload videos all while disguising their identities through a virtual private network (VPN).[15] *Id.* ¶¶ 112, 116. The site acknowledges that account holders are not required to verify the participants in the video and indicates "you might be banned if you upload from multiple accounts" but still permits users to access the site via VPN which hides the true geographic location of the user's IP address. *Id.* ¶ 122.

WGCZ also reviews, monitors, and approves incoming videos to determine whether the videos may be posted to channel accounts by confirming quality and length required for a channel account *Id.* ¶ 123. The videos are further reviewed to verify the content is not stolen. *Id.* As previously noted, the optimization, tags, and search terms are ***created*** by WGCZ and include "jailbait," "not 18," "flat hairless," "innocent little girl," "cheesepizza," "how old is she," "elementary," and more, which all suggest child rape and sex trafficking. *Id.* ¶¶ 129-135, 159-60. Defendants create and control thumbnail images and preview videos for content and even allow some uploaders of monetized content to choose the thumbnail for a limited time after uploading. *Id.* ¶¶ 137-43. Defendants advertise around these videos in order to monetize them thereby benefiting from them. *Id.* ¶¶ 127-28. They gather extensive user data that allows them to market the specific videos at target audiences. *Id.* ¶¶ 161-62. Their failure to

---

[14] Which does not require showing one's face, nor a valid ID, but merely "enough of you to prove that the content under your account is clearly yours." SAC ¶ 115.
[15] The XVideos site is sophisticated enough to determine whether someone entering its site is doing so by VPN and whether the IP address or account code was obtained from a server farm or illegitimate, non-traceable account. *Id.* ¶ 120.

17

sufficiently moderate chat rooms, or even register with NCMEC to report CSAM, indicates willful ignorance which serves to increase the amount of marketable content and the number of users they can target, all to their benefit. *Id.* ¶¶ 143-46, 153. These benefits are not incidental or remote, nor do they arise from a lawful enterprise where parties "turn a blind eye to the source of financial sponsorship" as in *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). Defendants also have marketed and promoted CSAM content and benefitted through the monetization of the partner channel and the increased views it garnered. Defendants facilitate a process whereby they partner with third parties to create channels so that both can share revenue based on the views the channel garners.[16] SAC ¶ 117-18, 159, 202, & 216(b).

These allegations, viewed in the light most favorable to Plaintiff, plausibly show that WGCZ and NKL participated in a sex trafficking venture.

## II.   PLAINTIFF'S TVPRA CLAIM IS ACTIONABLE REGARDLESS OF DEFENDANTS' PHYSICAL LOCATION ABROAD

Defendants further argue that "the SAC independently fails because it does not allege facts that would allow the federal sex trafficking statutes, 18 U.S.C. §§ 1591, 1595, to apply to foreign Defendants." Mot. at 16. Defendants' extraterritoriality arguments are wrong.[17]

Whether a case involves extraterritorial application of U.S. law is not "self-

---

[16] This partnership goes beyond third party publishing and entails Defendants actively promoting the content—including the content partner that disseminated Plaintiff's CSAM. SAC ¶¶ 121, 196. As noted above, these content partners receive a variety of benefits and support from Defendants in exchange for revenue sharing, such as optimization and monetization of the content, which requires significant involvement, including screening the videos and then creating tags, thumbnails and preview videos to increase their views, based on data driven information collected by WGCZ. *Id.* ¶¶ 124, 129-42. As long as the content partner maintains their channel, Defendants continue to offer this extensive and special support and engage in profit sharing, hence these transactions are a continuous business relationship. *Id.* ¶¶ 125-26, 197. Moreover, these transactions encourage the channel partner to create more content, including CSAM. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).

[17] *See generally Mindgeek*, 558 F. Supp. 3d at 840 (TVPRA claim sufficiently alleged against Canadian, Cypriot, and Luxembourger internet companies); *MG Freesites*, 676 F. Supp. 3d at 1167 (same).

---

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

evident" simply from the parties' location, their conduct, or the resulting harm.

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265-66 (2010). There is

> a two-step framework for analyzing extraterritoriality issues. At the first step, we ask . . . whether the statute gives a clear, affirmative indication that it applies extraterritorially. . . . If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's 'focus.'

*RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016). Courts have the discretion to begin at step two "in appropriate cases," especially where ruling on the scope of a statute in step one "would require resolving 'difficult questions' that do not change 'the outcome of the case.'" *WesternGeco v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018); *see also RJR*, 579 U.S. at 261 n.5. "By allowing courts to begin with the second step, . . . <u>the Supreme Court has recognized that there can be no extraterritoriality issue</u> <u>[in the first place] if a case involves a 'permissible domestic application' of a statute at</u> <u>the second step</u>." *United States v. Wolfenbarger*, 2020 WL 2614958, at *6 (N.D. Cal. May 22, 2020) (emphasis added) (citing *WesternGeco*, 585 U.S. at 415-17).

Defendants assert that the TVPRA cannot be applied by focusing entirely on the argument that they are not physically "present" in the United States and, therefore, not within the extraterritorial scope of § 1596. Mot. at 16-17. However, that argument fails for two distinct reasons.

***First***, assuming *arguendo* that the TVPRA is being applied *extraterritorially* here (which in not true as discussed below), Congress did not limit the extraterritorial scope of the TVPRA in § 1596 to *physical* "presence" as it has explicitly done in other statutes.[18] Congress specifically required physical presence elsewhere in the TVPRA by including the precise words "*physical presence*" in the section on adjustment of

---

[18]    *See, e.g.*, USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272 (2001) (foreign banks must "have a physical presence in any country" before the U.S. can have accounts with them); Online Pharmacy Consumer Protection Act of 1008, Pub. L. 110-425, Stat. 4820 (2008) (medical evaluations must be "conducted with the patient in the physical presence of the practitioner"); Radiation Exposure Compensation Act, Pub. L. 101-426, 104 Stat. 920 (1990) (act covers "individual who was physically present in the affected area").

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

immigration status. *See* Pub. L. 110–457, 122 Stat. 5044, § 201 (2008). The textual distinction between "presence" and "physical presence" in two sections of the same law is compelling proof that Congress intended no physical presence requirement in the extraterritoriality section. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). The omission of the word "physically" in § 1596(a)(2) must be considered intentional and that section cannot be rewritten to add the word "physically" before the word "present."

*Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8292922 (C.D. Cal. Dec. 21, 2017) shows how a defendant can be "present" within the U.S. under the TVPRA while being physically located abroad. In *Ratha*, the Court observed that a "corporation is present in a jurisdiction where it uses an agent to conduct its affairs" and that—at the pleading stage—allegations that defendants are "involved in a joint venture and part of an 'integrated enterprise'" and that some of the "joint venturers or agents" are in the U.S. "is sufficient for subject matter jurisdiction over all Defendants." *Id.* at *4.[19]

In this case, Defendants are part of an integrated enterprise and are a de facto single venture. SAC ¶¶ 2, 4-5, 8, 10, 16, 56-63, 68-69. The various Defendants act as agents of one another. *Id.* ¶ 63. The SAC alleges that Defendants are affiliated with U.S.-based companies VS Media and ServerStack, which conduct business in the U.S.

---

[19]    On appeal, the Ninth Circuit held that it "need not decide whether § 1596(a)(2) requires physical presence because even assuming the statute requires foreign companies to possess nothing more than minimum contacts with the United States, Plaintiffs have not established that Phatthana or S.S. Frozen have sufficient contacts to satisfy that standard." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1170 (9th Cir. 2022). Under this rationale, the TVPRA undoubtedly applies extraterritorially to WGCZ and NKL because the Ninth Circuit has already held that they have "extensive contacts with the United States[.]" *WebGroup Czech Rep.*, 93 F.4th at 458 (quotations omitted) (emphasis added); *see also Ratha v. Phatthana Seafood Co., Ltd.*, 2016 WL 11020222, at *7 (C.D. Cal. Nov. 9, 2016) ("foreign corporation is 'present' in the United States when 'a separate but affiliated company' maintains an office in the United States and conducts work on the company's behalf").

for Defendants. *Id.* ¶¶ 26-28, 72. And Defendants contract with and use U.S. based content delivery networks to temporarily store their content in the U.S. and to provide it to their U.S. users. *Id.* ¶ 19; *WebGroup Czech Rep.*, 93 F.4th at 453-54. Accepting the SAC allegations as true and construing them in the light most favorable to Plaintiff, Defendants are "present" in the U.S. for purposes of § 1596(a)(2), and this Court has subject matter jurisdiction over Plaintiff's TVPRA claims against Defendants.

**Second**, notwithstanding that Defendants are "present" in the United States within the meaning of § 1596, the Court need not even reach such potentially "difficult questions" because <u>this case "involves a permissible domestic application of [a] statute" and thus there is no extraterritoriality issue here at all.</u>[20] *WesternGeco*, 585 U.S. at 413-14 (emphasis added). Determining whether U.S. law is being applied domestically or extraterritorially requires "identifying the statute's 'focus' and asking whether the conduct relevant to that focus occurred in United States territory." *Id.* at 413. "The focus of a statute is 'the objec[t] of [its] solicitude,' which can include the conduct it 'seeks to regulate,' as well as the parties and interests it 'seeks to 'protec[t]' or vindicate." *Id.* at 413-14 (alterations in original) (quoting *Morrison*, *supra*).

Here, the "focus" of the TVPRA is the protection and assistance of sex trafficking victims, the prevention and deterrence of future sex trafficking, and the prosecution and punishment of traffickers,[21] and the conduct relevant to the TVPRA's

---

[20]    Defendants' argument that "there is no basis for applying section 1595 extraterritorially," Mot. at 17, ignores precedent stating that § 1596 <u>does</u> encompass civil suits brought under § 1595. *Ratha*, 35 F.4th at 1168; *Roe v. Howard*, 917 F.3d 229, 241-42 (4th Cir. 2019); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 200-01 (5th Cir. 2017). "To hold that the jurisdictional grant of Section 1596 excludes the remedies provided in Section 1595 would be both illogical and in contravention of the purpose of the statute." *Adhikari*, 697 F. Supp. 2d at 683.

[21]    *See* 22 U.S.C. § 7101(a) (TVPRA works "to combat trafficking in persons, . . . to ensure just and effective punishment of traffickers, and to protect their victims."); 146 Cong. Rec. S7781 (daily ed. Jul. 27, 2000) (statement of Sen. Wellstone) (the TVPA "aims to prevent trafficking in persons, provide protection and assistance to those who have been trafficked, and strengthen prosecution and punishment of those responsible for trafficking."); 146 Cong. Rec. E697 (daily ed. May 10, 2000) (statement of Rep. Maloney) ("It is important that we protect the victims of the sex trade industry, and

21

focus occurred in the United States—Plaintiff was trafficked and abused in the United States, and all the acts and conduct related to her underlying trafficking from which Defendants are benefitting occurred in the United States. *See, e.g.*, SAC ¶¶ 41-42, 47-50, 53, 188-94, 201-03. *Without the underlying sex trafficking and injury to Plaintiff in the United States, there would be no TVPRA claim against Defendants.* Accordingly, this case "involves a permissible domestic application" of the TVPRA, regardless of Defendants' location or conduct abroad. *WesternGeco*, 585 U.S. at 413; *RJR*, 579 U.S. at 337; *see also United States v. Skinner*, 536 F. Supp. 3d 23, 37-41 (E.D. Va. 2021) (CSAM prosecution against New Zealand resident who recorded images of Virginia minor but whose conduct occurred entirely in New Zealand constituted permissible "domestic application" of federal CSAM statute).

## III. PLAINTIFF SUFFICIENTLY ALLEGED DEFENDANTS' KNOWING POSSESSION AND RECEIPT OF CSAM

Defendants boldly assert Plaintiff has not alleged facts pertaining to knowledge for her CSAM claims, Mot. at 21-22, when the opposite is true. *See* SAC ¶¶ 50, 113-14, 116, 122-23, 131, 137-40, 147-49, 156, 159, 196, 199-200. The knowledge element requires "knowledge that the video contained sexually explicit conduct with a minor." *United States v. Ruiz-Castelo*, 835 F. App'x 187, 189 (9th Cir. 2020). Notably, knowledge can be proven with circumstantial evidence. *See United States v. Gartenlaub*, 2016 WL 3607154, at *2 (C.D. Cal. June 30, 2016), *aff'd sub nom.*, 751 F. App'x 998 (9th Cir. 2018).[22]  For instance, in *Ruiz-Castelo*, the Ninth Circuit found

---

punish the predators that exploit the women."); 151 Cong. Rec. S14299 (daily ed. Dec. 21, 2005) (statement of Sen. Clinton) (TVPRA incorporates "the 3 P's strategy—prevention of trafficking, prosecution of those that engage in these acts, and protection of the vulnerable individuals who have been trafficked"); *see also* M. Kappelhoff, *Federal Prosecutions of Human Trafficking Cases: Striking a Blow Against Modern Day Slavery*, 6 U. St. Thomas L.J. 9, 13 (Fall 2008) ("TVPA essentially codified a 'victim-centered' approach" to human trafficking").

[22]   *See also United States v. Haymond*, 672 F.3d 948, 957 (10th Cir. 2012); *United States v. Marchand*, 308 F.Supp.2d 498, 506 (D.N.J. 2004); *United States v. Pabon-Cruz*, 255 F.Supp.2d 200, 206 (S.D.N.Y. 2003); *MG Freesites*, 676 F. Supp. 3d at 1168.

sufficient facts to establish knowledge, *even without evidence that the defendant had viewed the video*, where the evidence demonstrated that (1) CSAM files are commonly identified with specific titles and tags like "reallola," which was the title of the video, (2) the uploaded and downloadable files contained that CSAM identifier, and (3) the defendant was a frequent user of CSAM.  835 F. App'x at 189; *see also United States v. Budziak*, 697 F.3d 1105, 1109-10 (9th Cir. 2012); *United States v. Montierth*, 839 F. App'x 184, 185 (9th Cir. 2021).

Plaintiff easily satisfies this knowledge requirement for §§ 2252, 2252A, and 2260(b). Defendants do not verify ages of participants in videos despite knowing CSAM is sought after and regularly uploaded. SAC ¶¶ 113-14, 122, 147-49. Defendants' optimization, logic, tags and/or search terms present users with "related searches" and terms used to identify CSAM. *Id.* ¶ 131 (including "jailbait," "not 18," "hairless," "innocent little young girl," "cheesepizza," "how old is she"). Defendants monitor, review and approve videos before they may appear on the sites. *Id.* ¶ 123. Defendants' revenue model boasts to advertisers of its search engine optimization, data mining capabilities, and intricate knowledge of users' interactions with content. *Id.* ¶ 159. Defendants reveal search patterns for CSAM on their sites, communicating to uploaders that CSAM is what viewers desire, even targeting ads toward pedophiles. *Id.* ¶¶ 156, 159. These practices require accessing and viewing videos, providing awareness of video content, and demonstrating their knowledge. *Mindgeek*, 558 F. Supp. 3d at 843; *MG Freesites*, 676 F. Supp. 3d at 1168-69.

Defendants also argue that, the proof requirement under 18 U.S.C. § 2260 is that the defendant knowingly receive CSAM. Mot. at 21. That standard is met here by allegations of Defendants' content review and moderation methods, advertisement model, search functions, and profit-sharing scheme. SAC ¶¶ 123, 131, 156, 159. Defendants create, store, and distribute thumbnail images of each video on their platforms, including CSAM. *Id.* ¶¶ 137-140. Defendants also access and view videos of CSAM and continue to distribute them on their websites, even after they have been

23

informed such videos contain CSAM. *Id.* ¶¶ 147-48. And, notably, Plaintiff reported

her own CSAM to Defendants. *Id.* ¶ 199. This, coupled with the contextual knowledge

of the nature of these videos, mirrors—if not exceeds—the evidence sufficient to meet

the knowledge requirement in *Ruiz-Castelo* and the other precedent cited herein.

## IV.    PLAINTIFF SUFFICIENTLY ALLEGED DEFENDANTS VIOLATED CAL. CIV. CODE § 1708.85[23]

Defendants assert that Plaintiff's claim for violation of Cal. Civ. Code § 1708.85

fails because Plaintiff has not alleged anything "suggesting she had any expectation

[her videos] would remain private." Mot. at 23. This argument disregards the criminal

nature of CSAM and that Plaintiff *did not and could not consent* to the creation of her

CSAM or to the uploading of her CSAM on Defendants' websites.[24] SAC ¶¶ 188-206,

236.  Unlike sexually explicit material of adults, CSAM is *always illegal*. It is for this

very reason that the United States—and each state, including California—have enacted

laws prohibiting and criminalizing CSAM. So, Defendants' argument that Plaintiff has

not alleged an expectation that her CSAM would remain private implies that there are

instances in which the public disclosure of her CSAM would be legally permissible.

The Court should not accept such a ridiculous assertion. And "without factually similar

case law, it would be premature to dismiss on these grounds." *Cline v. Reetz-Laiolo*,

2018 WL 11608044, at *15 (N.D. Cal. Nov. 19, 2018). Plaintiff alleges that she did

not consent to the online distribution of her CSAM and that, when she discovered her

CSAM on Defendants' websites, she repeatedly "pleaded with [Defendants] to remove

the videos." See SAC ¶¶ 188-206, 236.  Those allegations clearly demonstrate her

expectation that her CSAM would remain private. *Nixon in Int. of Moore v. Buck*, 2019

WL 6620504, at *8 (C.D. Cal. Sept. 11, 2019); *Cline*, 2018 WL 11608044, at *15.

---

[23]    For the same reasons that apply to the federal claims here discussed above, § 230 does not bar this claim brought under Cal. Civ. Code § 1708.85.

[24]    *See Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012) (emphasis added) (citations omitted) ("pornography injures a child's 'reputation and emotional well-being,' and violates 'the individual interest in avoiding disclosure of personal matters'").

24

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

## **CONCLUSION**

For all the foregoing reasons, Plaintiff Jane Doe respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated: September 18, 2024                    Respectfully submitted,

By: */s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
Mona Amini, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
ak@kazlg.com
mona@kazlg.com

Gregory M. Zarzaur*
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
gregory@zarzaur.com

Joshua P. Hayes*
PRINCE GLOVER HAYES
701 Rice Mine Road
Tuscaloosa, Alabama 35406
T: (205) 345-1234
jhayes@princelaw.net

Kimberly Lambert Adams*
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
kadams@levinlaw.com

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
lawcenter@ncose.com

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

Brian Kent*
Gaetano D'Andrea*
Michael Stewart Ryan*
Jillian P. Roth*
LAFFEY BUCCI & KENT LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
bkent@lbk-law.com
gdandrea@lbk-law.com
sryan@lbk-law.com
jroth@lbk-law.com

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
kkent@clarkhill.com
mschoeller@clarkhill.com
vhuber@clarkhill.com

Kathryn L. Avila*
DOMNICK CUNNINGHAM & YAFFA
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
T: (561) 229-0394
kathryn@pbglaw.com

*pro hac vice

Counsel for Plaintiff Jane Doe

26

1

## **CERTIFICATE OF SERVICE**

2      I am a resident of the State of California, over the age of eighteen years, and not

3 a party to the within action.  My business address is Kazerouni Law Group, APC, 245

4 Fischer Avenue, Unit D1, Costa Mesa, CA 92626. On September 18, 2024, I served

5 the within document(s):

6

### **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS**

7

8      ☒      CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m.  The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

9

10

11      I declare under penalty of perjury under the laws of the State of California that

12 the above is true and correct.

13                              _/s/ Abbas Kazerounian_
                              ABBAS KAZEROUNIAN, ESQ.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS