**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Michael E. Williams (Bar No. 181299)
michaelwilliams@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
dianecafferata@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants WebGroup Czech Republic, a.s.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; NKL Associates s.r.o.; Traffic F, s.r.o.; GTFlix TV, s.r.o.; FTCP, s.r.o.; HC Media, s.r.o.; FBP Media s.r.o.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>WEBGROUP CZECH REPUBLIC, A.S., *et al.*,<br><br>Defendants. | Case No. 2:21-cv-02428 SPG(SKx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**<br><br>Judge: Hon. Sherilyn Peace Garnett<br>Hearing Date: October 16, 2024<br>Hearing Time: 1:30 p.m.<br><br>Complaint Filed: March 18, 2021<br>Trial Date: None Set |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I. PLAINTIFF'S OPPOSITION CONFIRMS SHE CANNOT ESTABLISH A PLAUSIBLE SEX-TRAFFICKING CLAIM ....................... 2

    A. Plaintiff's Sex-Trafficking Claim Cannot Survive Section 230 ............. 2

        1. *WGCZ and NKL provide an interactive computer service* ........... 3

        2. *Plaintiff seeks to treat WGCZ and NKL as publishers* ................. 3

        3. *WGCZ and NKL did not create or develop the videos of Plaintiff* ........................................................................................ 8

    B. Plaintiff Fails To Identify Facts To Invoke FOSTA's Exception ........... 9

    C. Plaintiff Fails To Identify Facts Allowing This Court to Apply 18 U.S.C. § 1595 To Foreign Defendants ................................................. 11

    D. Plaintiff Fails To Show Any Defendant Participated In A Sex-Trafficking Venture ............................................................................. 13

II. PLAINTIFF FAILS TO ESTABLISH A PLAUSIBLE CLAIM FOR RECEIPT OR DISTRIBUTION OF CHILD PORNOGRAPHY ................... 14

III. PLAINTIFF FAILS TO ESTABLISH A PLAUSIBLE VIOLATION OF SECTION 1708.85 OF THE CALIFORNIA CIVIL CODE .......................... 15

CONCLUSION ....................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page

### Cases

*A.M. v. Omegle.com LLC*,
  2023 WL 1470269 (D. Or. Feb. 22, 2023) ................................................................. 9

*Adhikari v. Daoud & Partners*,
  697 F. Supp. 2d 674 (S.D. Tex. 2009) ..................................................................... 12

*Adhikari v. Kellogg Brown & Root, Inc.*,
  845 F.3d 184 (5th Cir. 2017) ................................................................................... 12

*Anderson v. TikTok, Inc.*,
  --- F.4th ---, 2024 WL 3948248 (3d Cir. Aug. 27, 2024) .................................. 10, 11

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
  785 F. Supp. 2d 799 (N.D. Cal. 2011) ....................................................................... 5

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................................... 3

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1125 (9th Cir. 2003) ................................................................................... 8

*Doe #1 v. Twitter, Inc.*,
  2023 WL 3220912 (9th Cir. May 3, 2023) ................................................................ 4

*Doe I v. Apple Inc.*,
  2021 WL 5774224 (D.D.C. Nov. 2, 2021) .............................................................. 12

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) (Opp. 12) ...................................................... 9

*Doe v. Reddit, Inc.*,
  2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ............................................................. 4

*L.W. ex rel. Doe v. Snap Inc.*,
  2023 WL 3830365 (S.D. Cal. June 5, 2023) ........................................................... 11

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021) ....................................................................... 4

*Does 1–6 v. Reddit*,
   51 F.4th 1137 (9th Cir. 2022) ............................................................................ 2, 9, 10

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ............................................................................. 2, 11

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) ................................................................. 3

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ....................................................................................... 11

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ........................................................................................ 7

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .................................................................................. 8

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   579 U.S. 325 (2016) ........................................................................................... 12, 13

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) ................................................................................... 12

**Statutes**

18 U.S.C. § 1591 ................................................................................................. 1, 9, 11

18 U.S.C. § 1595 ...................................................................................... 11, 12, 13, 14

18 U.S.C. § 1596 ............................................................................................................ 12

18 U.S.C. § 2258A ..................................................................................................... 5, 7

47 U.S.C. § 230 ............................................................................................................ 1, 6

**Other Authorities**

Testimony of Michelle DeLaune, NCMEC President and CEO (Feb. 14, 2023) ............................................................................................................. 5

# PRELIMINARY STATEMENT

Plaintiff Jane Doe's opposition repeats the same arguments and relies on the same allegations this Court rejected when it granted Defendants' prior motion and dismissed Plaintiff's First Amended Complaint. Indeed, Plaintiff largely ignores this Court's prior ruling and does not attempt to explain how the "new" allegations in her Second Amended Complaint ("SAC") should alter this Court's analysis. It is now clear Plaintiff cannot state a plausible claim for relief despite having two opportunities to amend. This Court should therefore dismiss Plaintiff's SAC with prejudice.

Plaintiff fails meaningfully to address this Court's prior ruling that her claims are barred by section 230. Dkt. 192 at 6-16. Plaintiff concedes WGCZ and NKL provide an "interactive computer service." 47 U.S.C. § 230(c)(1); Opp. 4. Plaintiff continues to argue she is not seeking to treat the two websites as publishers of third-party content and instead seeks to hold them responsible for their own misconduct. Opp. 4-9. But this argument is belied by the SAC's allegations, and this Court already rejected the argument. Dkt. 192 at 7-13. Similarly, this Court's prior ruling rejected Plaintiff's argument that WGCZ and NKL are responsible for creating or developing third-party content based on their use of neutral website tools that apply to all content, such as allowing uploaders to select tags, titles, and categories for videos. And the SAC fails to allege any new facts showing WGCZ or NKL contributed to the illegality of CSAM third parties allegedly posted to their websites.

Nor does Plaintiff identify allegations showing any Defendant committed criminal sex trafficking under section 1591, as needed to exempt her sex-trafficking claim from section 230 based on the Fight Online Sex Trafficking Act ("FOSTA"). There are no facts in the SAC plausibly showing any Defendant trafficked her. Nor has Plaintiff plausibly alleged that any Defendant knowingly benefitted from participating in a sex-trafficking venture with her alleged trafficker(s). As the Ninth Circuit recognized, "a website does not violate section 1591 if it merely 'provides a platform where it is easy to share child pornography, highlights [webpages] that

feature child pornography to sell advertising on those pages, … and fails to remove child pornography even when users report it." *Does 1–6 v. Reddit*, 51 F.4th 1137, 1145 (9th Cir. 2022). Yet that is, at most, all Plaintiff alleges here.

Finally, independent of section 230, Plaintiff's claims still fail for multiple other reasons. As to her sex-trafficking claim, she fails to plausibly allege that any Defendant participated in a venture with her alleged trafficker(s). Additionally, the sex-trafficking statute on which she relies does not apply to Defendants, all of which are foreign companies, because Plaintiff cannot fit her claims within the limited grant of extraterritorial jurisdiction for sex-trafficking claims. As to her child-pornography claims, Plaintiff fails to allege that WGCZ or NKL knew the videos of her were CSAM while they were live on their websites because, even as alleged, she never told them she was underage in the videos. And as this Court recognized, conclusory allegations that people requested that videos be removed, as Plaintiff claims to have done (SAC ¶¶ 199-200), are "not sufficient to allege liability under the at-issue statutes." Dkt. 192 at 20-21. Last, as to section 1708.85, Plaintiff fails to identify any facts, as opposed to conclusory allegations, showing any Defendant knew or should have known she had a reasonable expectation of privacy in the videos.

For these reasons, and as set forth in more detail below, this Court should grant Defendants' motion and dismiss Plaintiff's SAC with prejudice.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION CONFIRMS SHE CANNOT ESTABLISH A PLAUSIBLE SEX-TRAFFICKING CLAIM

As Defendants demonstrated, Plaintiff's sex-trafficking claim fails for many reasons. Plaintiff presents no credible arguments to the contrary.

#### A. Plaintiff's Sex-Trafficking Claim Cannot Survive Section 230

"[W]hen a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). That is the situation here.

### 1. **WGCZ and NKL provide an interactive computer service**

Plaintiff concedes WGCZ and NKL provide an interactive computer service, satisfying the first requirement for section 230 immunity. Opp. 4.

### 2. *Plaintiff seeks to treat WGCZ and NKL as publishers*

Plaintiff fails to refute WGCZ and NKL's showing that her SAC treats them as publishers. "Publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). "Any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).

Plaintiff's allegations confirm she seeks to hold WGCZ and NKL liable for publishing videos of her on their websites and supposedly not "withdraw[ing] [them] from publication," *Barnes*, 570 F.3d at 1102, when she requested they do so, *see* SAC ¶¶ 198-206. Indeed, the first paragraph of Plaintiff's opposition states she "brought this action to hold Defendants accountable for profiting off the CSAM that they receive, possess, and/or ***disseminate*** on their website." Opp. 1 (emphasis added). And she seeks to compel Defendants to "***refuse to publish*** videos … suspected of containing [CSAM]." SAC at 63 (emphasis added). Plaintiff's assertion (Opp. 5) that she seeks to hold WGCZ and NKL liable for "acts independent of disseminating information to third parties" is based on a mischaracterization of the SAC. Her claims are inextricably intertwined with publishing, and her arguments to the contrary fail.

***Receipt and Distribution of Alleged CSAM.*** Plaintiff erroneously argues, as she did before, that she "seeks to hold WGCZ and NKL liable for their *own* bad acts independent of disseminating information to third parties." Opp. 4. Plaintiff contends she seeks to hold WGCZ and NKL "liable for 'receipt' or 'possession' of illegal images of minors," which are supposedly "not the acts of 'publishers' or 'speakers.'" Opp. 5. But this Court already rejected that argument, noting: "Receipt of materials

or content is … simply the first step of the publishing regime," so "mere receipt of illicit material is not sufficient to preclude immunity under Section 230." Dkt. 192 at 13. Consistent with that, many courts, including the Ninth Circuit, apply section 230 to civil claims against websites for receipt of child pornography.[1]

Indeed, on appeal in *Twitter*, the same counsel representing Plaintiff here argued the child-pornography claim did not "treat Twitter as a publisher or speaker" because the claim "encompasse[d] Twitter's … knowingly possessing the CSAM for several days after it reviewed it." Pls.' 2nd Br. On Appeal, *Doe v. Twitter*, 2022 WL 3331057, at *54 (Aug. 5, 2022). Counsel argued, as they do here, that "[p]ossessing and receiving CSAM is distinct from being a 'publisher' or 'speaker.'" *Id.* Yet the Ninth Circuit found this reasoning unavailing, affirming the dismissal of the child-pornography claim, as "the complaint target[ed] 'activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Twitter*, 2023 WL 3220912, at *2. Ninth Circuit authority forecloses Plaintiff's argument.

Plaintiff advances a convoluted argument "that Congress did *not* intend § 230 to immunize internet companies like Defendants from claims relating to the receipt and possession of CSAM." Opp. 6-7. According to Plaintiff, applying section 230 to her child-pornography claims would (1) render "meaningless and ineffective" section 2258A(a), which requires websites to report apparent CSAM to the National Center for Exploited and Missing Children ("NCMEC"), subject to monetary penalties; and (2) render "superfluous and unnecessary" section 2258B(a), which provides immunity from "civil and criminal charges" "arising from the performance of the reporting and preservation responsibilities" in section 2258A." *Id.* These arguments are legally unsupported and misconstrue the purposes of the relevant statutes.

As a threshold issue, the reporting statute on which Plaintiff relies is

---

[1] *See Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 927 (N.D. Cal. 2021); *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *6 (C.D. Cal. Oct. 7, 2021).

inapplicable here. As NCMEC acknowledged in a report to Congress, "international companies … have no obligation to report to [NCMEC's] CyberTipline."[2] Thus, no Defendant here is subject to the reporting or preservation responsibilities in section 2258A(a), and no Defendant could face penalties for noncompliance. Nor would any Defendant need to invoke section 2258B(a)'s immunity provision, which immunizes websites from claims "arising from the performance of the reporting and preservation responsibilities … under … section 2258A…."

Further, Plaintiff's assertion that section 2258A's "prohibition and sanctions against ISPs for failing to report CSAM to NCMEC [is] utterly meaningless and ineffective" if "ISPs [are] immune under § 230 from claims for receipt and possession of CSAM because obtaining and possessing content is part of being a publisher" is wrong. There is nothing inconsistent with these positions. To the contrary, Plaintiff's interpretation would undermine Congressional intent. Section 230 prevents ISPs from being held liable for third-party content. And section 2258A(f) makes clear that ISPs have no duty to "monitor any user, subscriber, or customer of that provider … or … affirmatively search, screen, or scan for" apparent CSAM. If, however, an ISP obtains "actual knowledge" of an "apparent violation of section 2251, 2251A, 2252, 2252A, 2252B or 2260 that involves child pornography," the ISP has a duty to report to NCMEC; the failure to do so can result in fines. 18 U.S.C. § 2258A(a)(1)(A)(i), (a)(2)(A), (e). Had Congress intended to impose liability on an ISP for receipt and distribution of CSAM posted by third parties, it could have clearly said so in section 2258A. Instead, it imposed only a fine on ISPs that "knowingly and willfully" fail to report to NCMEC. *Id.* § 2258A(e). Even then, Congress immunized ISPs from civil and criminal claims barring extreme circumstances, as stated in section 2258B(a).

---

[2] *Protecting Our Children Online*, U.S. Senate Comm. on the Judiciary, Testimony of Michelle DeLaune, NCMEC President and CEO at 8 (Feb. 14, 2023), https://tinyurl.com/zvjrmfmn; *see Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 834 (N.D. Cal. 2011) (taking notice of congressional testimony).

Plaintiff's position has no basis in law and contravenes decisions by many courts, including the Ninth Circuit, which hold section 230 bars child-pornography claims. *See* note 1.

**Alleged Sex Trafficking.** Plaintiff errs in arguing her sex-trafficking claim does not treat WGCZ and NKL as "publishers" of third-party content. Opp. 7. As Plaintiff notes, the Ninth Circuit employs a two-prong test to determine if a claim seeks to treat a website as a publisher. "First, what is the "right' from which the duty [allegedly violated] springs?" *Calise*, 103 F.4th at 742. "If it springs from something separate from the defendant's status as a publisher … then § 230(c)(1) does not apply." *Id.* (citations omitted). "Second, [courts] ask what is this duty requiring the defendant to do?" *Id.* "If it obliges the defendant to 'monitor third-party content'—or else face liability—then that too is barred by § 230(c)(1)." *Id.*

Here, first, the duty WGCZ and NKL allegedly violated "springs from" their "status as … publisher[s]." *Id.* Plaintiff alleges, in connection with her sex-trafficking claim: "WGCZ Defendants' business model includes promoting and encouraging CSAM, hosting voluminous CSAM on their website, fail[ing] to moderate and cull out illegal content, profiting from CSAM, and revenue-sharing with uploaders of CSAM." SAC ¶ 214. And Plaintiff alleges Defendants, "[t]hrough their lack of safeguards in moderating content and keeping CSAM off of their websites … actively assist, support, and facilitate sex trafficking." *Id.* ¶ 215. Thus, the duty that WGCZ and NKL supposedly violated—to "keep[] CSAM off of their websites" (*id.*)—"springs from" their "status as … publisher[s]." *Calise*, 103 F.4th at 742.

Second, Plaintiff's sex-trafficking claim seeks to require WGCZ and NKL to monitor third-party content. Plaintiff alleges, in connection with her sex-trafficking claim, that Defendants' "business model includes … failure to monitor and cull out illegal content." SAC ¶ 214. Plaintiff accuses Defendants of having a "lack of safeguards in moderating content and keeping CSAM off of their websites." *Id.* ¶ 215. And she claims Defendants "knowingly participated in a sex trafficking ventures"

because, among other things, they "did nothing to verify the parties or individuals in the content uploaded to their websites were 18 years or older." *Id.* ¶ 216(d). Thus, the duty on which Plaintiff relies for her sex-trafficking claim would require websites to "monitor third-party content." *Calise*, 103 F.4th at 742. Not only does that duty fail the second prong of the test, it is directly contrary to Congress's directive that websites need not "monitor any user, subscriber, or customer" or "affirmatively search, screen or scan" for apparent CSAM. 18 U.S.C. § 2258A(f).

Nor is there merit to Plaintiff's reliance on an alleged revenue-sharing theory under *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021). Opp. 8. This Court already rejected this theory (Dkt. 192 at 13), ruling that "revenue-sharing—so long as the methods by which revenue sharing is conducted are neutral with respect to the content—is … an insufficient basis for liability." Plaintiff identifies no basis for this Court to change its prior ruling. Nor could she. Her revenue-sharing theory is not like the one in *Google*. There, family members of ISIS victims sued Google, alleging it violated the Anti-Terrorism Act by "providing ISIS with material support by *giving ISIS money*." *Id.* at 898. Unlike some of the plaintiffs' other claims, this "revenue-sharing theory d[id] not depend on the particular content ISIS place[d] on YouTube"; rather, it was "solely directed to Google's unlawful payments of money to ISIS." *Id.* Per the Ninth Circuit, "the best indication that … Plaintiffs' revenue-sharing allegations [were] not directed to any third-party content is that Google's alleged violation of [the Act] could be remedied without changing any of the content posted by YouTube's users"; Google could have left up ISIS's videos but ceased revenue sharing. *Id.* Thus, the claim did not seek to hold Google liable for third-party content.

Here, none of Plaintiff's claims as alleged "could be remedied without changing any of the content posted by [alleged traffickers]." *Id.* at 898. Under her theory, websites would still be liable if they kept up CSAM and stopped sharing revenue with uploaders. As Plaintiff's allegations confirm, she seeks to "requir[e] the Defendants to identify and remove child pornography." SAC at 61. Her claims are

directed at "third-party content," unlike the revenue-sharing claim in *Google*.

### 3. *WGCZ and NKL did not create or develop the videos of Plaintiff*

Plaintiff fails to show WGCZ and NKL created or developed the videos depicting her in order to escape Section 230 immunity. First, Plaintiff again misplaces reliance on a litany of allegations that supposedly show WGCZ and NKL materially contribute to illegality of CSAM posted to their websites. Opp. 12. This Court already rejected Plaintiff's argument that creating thumbnails and allowing users to select tags, titles, and categories for videos rendered WGCZ or NKL creators or developers of the underlying content. Dkt. 192 at 13-16. Indeed, as Defendants have explained, CSAM is unlawful when made. Dkt. 180 at 22. Nothing any Defendant did, such as allowing users to select tags, titles, and categories—"enhance[d] the illegality of any piece of content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016). Plaintiff simply ignores this Court's prior ruling and Defendants' detailed explanation (Mot. 9-13) as to why none of their website features show creation or development of content. Additionally, as this Court recognized, and Plaintiff fails to address, "Defendants' prohibition on CSAM distinguishes this case from *Roommates*, where the website 'encouraged' or 'required' the posting of illegal content." Dkt. 192 at 15; *see* Defs.' (Unopposed) Req. Judicial Notice (Dkt. 198), Ex. A.

Second, as Defendants demonstrated (Mot. 9), Plaintiff needed to allege facts showing Defendants created or developed the "particular [content] at issue"—the videos of Plaintiff. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1125 (9th Cir. 2003). But Plaintiff does not allege facts showing Defendants did so. Rather, she relies on general allegations about how WGCZ and NKL supposedly operate their websites. Opp. 12. This Court already ruled those features do not establish that WGCZ or NKL created or developed third-party content. Regardless, Plaintiff does not even allege that her videos had titles, tags, or keywords allegedly associated with CSAM. By not addressing the relevant legal standard, Plaintiff tacitly concedes she cannot satisfy it.

At bottom, Plaintiff fails to plausibly allege that WGCZ or NKL created or

developed the videos of her. Those videos are thus "information provided by another information content provider," satisfying the final requirement for immunity.[3]

### B.   Plaintiff Fails To Identify Facts To Invoke FOSTA's Exception

Plaintiff cannot avoid section 230 immunity based on FOSTA's exception. Plaintiff concedes that to invoke the exception, she needs to show Defendants' "own conduct violated 18 U.S.C. § 1591." *Reddit*, 51 F.4th at 1145. She cannot do so.

First, Plaintiff makes the extraordinary argument that she alleged facts supporting a "claim for direct liability under § 1591(a)(1)." Opp. 14. Section 1591(a)(1) imposes criminal liability on anyone who "knowingly … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person … knowing … the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." Here, Plaintiff has never alleged that any Defendant engaged in trafficking conduct prohibited by section 1591(a)(1)—e.g., recruitment or enticement—while "knowing" Plaintiff had "not attained the age of 18 years and w[ould] be caused to engage in a commercial sex act." *Id.* Rather, as Plaintiff's allegations concede, she was allegedly trafficked by an unidentified person who is not a party to this case. SAC ¶¶ 188-90.[4]

Second, the SAC fares no better alleging facts supporting a beneficiary-liability claim under section 1591(a)(2). Plaintiff concedes, as she must, that "association with

---

[3]   Plaintiff again relies on *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 842 (C.D. Cal. 2021) (Opp. 12), but fails to explain how the reasoning in that case should alter this Court's prior analysis. And as Defendants previously explained, and Plaintiff has yet to address, *Mindgeek* did not explain how actions such as establishing guidelines for categories, tags, and titles for adult videos materially contributes to the illegality of third-party CSAM posted on adult websites. Dkt. 183 at 13 n.13.

[4]   Plaintiff's allegations as to section 1591(a)(1) are nothing like *A.M. v. Omegle.com LLC*, 2023 WL 1470269, at *3-4 (D. Or. Feb. 22, 2023). There, a live video-chat website enticed persons "13 years and older to use its website." And the website's "most regular and popular use [was] for live sexual activity," so it was "aware that users engage in sexual and masturbatory conduct on [its] platform." *Id.*

sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." Opp. 14 (quoting *Reddit*, 51 F.4th at 1145). And websites that "merely 'turn a blind eye to the source of their revenue' cannot be held liable under § 230." Opp. 14-15. As Defendants demonstrated, that is, at most, what Plaintiff has alleged here. Mot. 15-16.

Plaintiff's assertion that "Defendants were in a 'revenue-sharing relationship' with a 'content partner' that posted her CSAM" (Opp. 15) is unavailing. This Court already rejected that argument, concluding: "revenue-sharing—so long as the methods by which revenue sharing is conducted are neutral with respect to the content—is … an insufficient basis for liability." Dkt. 192 at 13.

Nor is there merit to Plaintiff's assertion that "unlike in *Reddit*, [she] has alleged Defendants' knowledge of CSAM on their website and that aspects of Defendants' business model encourage and capitalize on CSAM." Opp. 15. The *Reddit* plaintiffs had similarly alleged "that the presence of child pornography on Reddit is blatant, but Reddit has done little to remove the unlawful content or prevent it from being posted, because it drives user traffic and revenue." 51 F.4th at 1139. They alleged "Reddit hosted many subreddits that openly and explicitly marketed themselves as fora for child pornography, with names like /r/BestofYoungNSFW." *Id.* And they alleged "Reddit earn[ed] substantial advertising revenue" and thus took "little action to block it from the platform," in addition to "not adequately train[ing] its moderators to screen and remove unlawful content." *Id.* "[S]ome moderators [even] post[ed] child pornography themselves." *Id.* That is not meaningfully different than, and arguably exceeds, what Plaintiff alleges here.

Finally, Plaintiff misplaces reliance on *Anderson v. TikTok, Inc.*, --- F.4th ---, 2024 WL 3948248, at *3 (3d Cir. Aug. 27, 2024), to argue that websites "engage in their own speech—and, therefore, are not immune under § 230—when they provide third-party content to users through search and recommendation functions." Opp. 11. *Anderson* is distinguishable and contradicts Ninth Circuit authority. *Anderson*

involved TikTok curating videos into a compilation that it recommended to a minor, leading the minor to commit suicide. *Id.* at *1. TikTok's algorithm would "curate[] and recommend[] a tailored compilation of videos for a user's [homepage] based on a variety of factors, including the user's age and other demographics, online interactions, and other metadata." *Id.* The Third Circuit held that because "platforms engage in protected first-party speech under the First Amendment when they curate compilations," "it follows that doing so amounts to first-party speech under § 230." *Id.* Here, there are no curated compilations of Plaintiff created by Defendants.

Moreover, the Ninth Circuit has rejected *Anderson*'s reasoning. In *Dyroff*, the Ninth Circuit held that using "features and functions, including algorithms, to analyze user posts … and recommend other user groups," is merely "acting as a publisher of others' content." 934 F.3d at 1098. Such functions are "tools meant to facilitate the communication and content of others" and are "not content in and of themselves." *Id.* Curating content is a quintessential function of a publisher. *Dyroff*, 934 F.3d at 1098; *see Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019). There is no support for the notion that publication activities protected by the First Amendment are not protected by section 230.

At bottom, Plaintiff has not plausibly alleged, nor can she, that any Defendant committed a criminal violation of section 1591: "failing to efficiently monitor or police user-generated content is not punishable under Section 1591." *L.W. ex rel. Doe v. Snap Inc.*, 2023 WL 3830365, at *7 (S.D. Cal. June 5, 2023).

**C.    Plaintiff Fails To Identify Facts Allowing This Court to Apply 18 U.S.C. § 1595 To Foreign Defendants**

Plaintiff fails to refute Defendants' showing that the sex-trafficking statutes on which she relies do not apply extraterritorially to foreign defendants with no presence in the U.S. As this Court previously ruled, Plaintiff has not alleged sufficient facts to invoke section 1596's grant of extraterritorial jurisdiction because she had not alleged that any Defendant is a "national[] of the U.S., alien[] lawfully admitted for permanent

residence, or present in the United States." Dkt. 192 at 19-20. In her SAC, Plaintiff does not allege any new facts showing Defendants are present in the U.S., nor could she. Instead, she advances a series of unconvincing arguments that ignore this Court's prior ruling and Defendants' grounds for dismissal.

First, Plaintiff fails to credibly respond to Defendants' argument (Mot. 17) that there is no basis for applying section 1595 extraterritorially. Plaintiff does not address the fact that "§ 1596 explicitly grants extraterritorial application to many criminal statutes," but "it does not mention their civil analogue, § 1595." *Doe I v. Apple Inc.*, 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021). Plaintiff asserts in a footnote there is "precedent stating that § 1596 does encompass civil suits brought under § 1595." Opp. 21 n.20. But Plaintiff's out-of-circuit cases are unavailing.[5] Plaintiffs also errs in arguing that "[t]o hold the jurisdictional grant of Section 1596 excludes the remedies in Section 1595 would be both illogical and in contravention of the purpose of the statute." Opp. 21 n.20 (quoting *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 683 (S.D. Tex. 2009)). Accepting that argument would expand the extraterritorial reach of section 1596 when Congress did not do so. *See* Mot. 17.

Second, even if section 1596 governs the extraterritorial application of section 1595, Plaintiff fails to show the requirements of section 1596 are met. Plaintiff fails to identify any facts showing Defendants, all foreign companies, are "present in the United States." 18 U.S.C. § 1596(a). Plaintiff asserts, "Defendants are affiliated with U.S.-based companies VS Media and ServerStack, which conduct business in the U.S.

---

[5] In *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017), the primary question was whether section 1595 applied extraterritorially before section 1596 was enacted. The Fifth Circuit held it did not, *id.* at 201, and the parties did not dispute that section 1596 expanded the territorial reach of section 1595, as the parties do here. In *Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019), the Fourth Circuit held that section 1595 has always had extraterritorial application, even before Congress enacted section 1596. But that conflicts with *Adhikari* and Supreme Court authority requiring a "clearly expressed congressional intent" for extraterritorial application. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016).

for Defendants." But this Court dismissed VS Media and Server Stack because no proper claim had been alleged against them. Dkt. 162 at 24. Nor does Plaintiff cite authority for the proposition that foreign entities are "present in" the U.S. merely because they contract with U.S. companies. This Court should reaffirm its prior ruling that no Defendant is "present in" the U.S., such that none of the requirements "for extraterritorial application under Section 1596 [are] met." Dkt. 192 at 19-20.

Finally, Plaintiff errs in arguing (Opp. 21) that this case involves a "domestic application" of section 1595. When, as here, Congress has defined the extraterritorial reach of a statute, its scope "turns on the limits Congress has (or has not) imposed on the statute's foreign application." *RJR Nabisco*, 579 U.S. at 337. Congress has both defined and limited the extraterritorial reach of the sex-trafficking statutes as provided in section 1596. Regardless, this case would not involve a domestic application of section 1595 because "none of the [alleged] conduct relevant to the statute's focus occurred in the United States." *Id.* None of Defendants' alleged acts—such as "hosting voluminous CSAM on their websites" and "fail[ing] to moderate" (SAC ¶ 214)—would have occurred in the U.S. This case does not involve a domestic application of section 1595, and the claim should be dismissed for this reason as well.

### D. Plaintiff Fails To Show Any Defendant Participated In A Sex-Trafficking Venture

Defendants demonstrated that Plaintiff's sex-trafficking claim fails for the independent reason that she does not allege plausible facts showing any Defendant participated in a sex-trafficking venture with her trafficker(s). Dkt. 199 at 23-26. Plaintiff mischaracterizes her allegations by arguing "the SAC sufficiently alleges that Defendants knew or should have known Plaintiff was a victim of sex trafficking and that they benefitted from her trafficking." Opp. 16. Plaintiff asserts she "reported her videos and put Defendants on notice." *Id.* But as Defendants have explained, and Plaintiff has never addressed, her vague allegation that she "reached out to [WGCZ and NKL] multiple times over the years, beginning in at least 2017, requesting her

abuse videos be removed" does not show that she told WGCZ or NKL that she was underage or a victim of sex trafficking in the videos. SAC ¶ 199.

Further, there are no plausible facts alleged showing Defendants knowingly benefitted from "participation in a venture which [they] knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a). As Defendants explained, and Plaintiff did not address, there are no facts that plausibly establish that WGCZ and NKL participated *with Plaintiff's alleged traffickers* in what they knew or should have known was a sex-trafficking venture. Mot. 20. And Plaintiff's assertion that she alleged "examples of business associates responsible for sex trafficking, including WGCZ production studio Bang Bros, who have filed, produced, and distributed CSAM" (Opp. 16) has no relevance to her claim. As Defendants explained, section 1595 requires specific knowledge of, and participation in, a trafficking venture involving the specific plaintiff. Mot. 18

## II. PLAINTIFF FAILS TO ESTABLISH A PLAUSIBLE CLAIM FOR RECEIPT OR DISTRIBUTION OF CHILD PORNOGRAPHY

Along with being barred by section 230 (Dkt. 199 at 26-27), Plaintiff fails to allege plausible facts showing Defendants knew she was underage in the videos. Plaintiff argues "knowledge can be proven with circumstantial evidence," but she does not identify circumstantial evidence showing that Defendants knew the videos of her were CSAM. Opp. 22 Plaintiff asserts that WGCZ and NKL review the videos uploaded to their websites and that some videos purportedly have tags or titles associated with CSAM. Opp. 23. But as Defendants explained, and Plaintiff did not address, Plaintiff does not allege any facts about her appearance in the videos or the videos' tags, titles, or categories that would suggest that she was underage. Mot. 21.

Plaintiff also misleadingly asserts that she "reported her own CSAM to Defendants," citing paragraph 199 of her SAC. Opp. 24. Plaintiff does not, however, allege in her SAC that she told WGCZ or NKL that the videos of her were CSAM. *See* SAC ¶ 199. Further, as this Court ruled, and Plaintiff does not address, conclusory

allegations that people requested that videos be removed are "not sufficient to allege liability under the at-issue statutes." Dkt. 192 at 20-21.

### III. PLAINTIFF FAILS TO ESTABLISH A PLAUSIBLE VIOLATION OF SECTION 1708.85 OF THE CALIFORNIA CIVIL CODE

Along with being barred by section 230 (Dkt. 199 at 28), Plaintiff fails to identify factual allegations showing a violation of section 1708.85. Plaintiff mischaracterizes Defendants' argument in stating they contend that her section 1708.85 claim fails because she "has not alleged anything 'suggesting she had any expectation [her videos] would remain private.'" Opp. 24. Defendants' argument is that Plaintiff has not alleged anything showing that any Defendant **knew or should have known** Plaintiff had a reasonable expectation the videos would remain private. Plaintiff's conclusory assertion that she "pleaded with [Defendants] to remove the videos" (*id.*)—with no supporting facts as to what she told any Defendant—does not show any Defendant knew or should have known she had a reasonable expectation of privacy in the videos.

### CONCLUSION

This Court should dismiss Plaintiff's SAC with prejudice.

DATED: October 2, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Michael E. Williams*
Michael T. Zeller
Michael E. Williams
Diane Cafferata
Dylan C. Bonfigli
*Attorneys for Defendants*

# CERTIFICATE OF COMPLIANCE

I, the undersigned counsel of record for Defendants, certify that the memoranda of points and authorities for this motion does not exceed fifteen pages. That complies with this Court's Standing Order for Newly Assigned Civil Cases.

Dated: October 2, 2024

                                             */s/ Michael E. Williams*
                                             Michael E. Williams